Ross W. Wood and A. H. Grant v. Isaac B. Wellington
and E. B. Abbott.

The charter of the Atlas Mutual Insurance Company, granted in 1843,
adopted a section of the charter of the Atlantic Insurance Company,
granted in 1842. *Held*, that these acts, being passed subsequent to the
revised statutes, must, so far as they prescribe a rule for the transfer of
paper held by the company, different from that declared by the revised
statutes, be deemed to overrule the former law.

The charter of the Atlas Mutual Insurance Company, in regard to notes
received for premiums in advance, authorized the company to negotiate
them for the purpose of paying claims, or otherwise, in the course of its
business. *Held*, that a note given for premiums on an open policy of
insurance to the makers, and afterwards substituted for notes which had
been negotiated by the company to the plaintiffs, for the purpose of pay-
ing claims, or otherwise, in the course of its business, must be regarded
as a note of the character specified in the charter; and that the transfer
thereof to the plaintiffs by the company, was lawful, and the title of the
plaintiffs indisputable.

*Held*, also, that if the notes originally negotiated were lawfully transferred
to the plaintiffs, the surrender of those notes, and the substitution of
others in their place, for the convenience and accommodation of the par-
ties, was not unlawful; it being but an exchange of securities, all of
which were of a character which made it proper, under the charter, for
the company to negotiate them for the purposes of its ordinary business.

The note sued on was indorsed as follows: "Pay —— for account of the
Atlas Mutual Insurance Company. G. H. T., Secretary." It appearing
that the object of the indorsement was to pass an absolute title to the
plaintiffs, and that this was the *usual* mode of transfer with this company;
and the nature of the transaction showing that the intention of the parties
was to pass an absolute and unrestricted title to the paper; *Held*, that
the indorsement, though slightly ambiguous on its face, was susceptible
of that construction, and fairly indicated either that the secretary indorsed
the note for or on account of the company, or that the plaintiffs, on
receiving the sum due thereon, were to credit the same to the account of
the company, as between the transferee and such company.

*Held*, further, that on such an indorsement the makers could not refuse
payment to the holders, whether the name of the payee in the indorse-
ment remained *in blank*, or was filled in with the names of the plaintiffs.

That it was a transfer of the title to them, only to be defeated on a prose
cution of the note, by proof that the plaintiffs were not the real *parties in
interest*.

*Appeal by the plaintiffs from a Judgment of the General
Term of Superior Court of New York, affirming a
judgment of non-suit of the Special or Trial Term of
the same court.*

THIS action was brought against the defendants as makers
of a promissory note for $1,400, dated November 8, 1855,
and payable eight months after date, to the order of the
Atlas Mutual Insurance Company, of which the plaintiffs
claimed to be endorsers and holders.   The note was as
follows:

"$1,400.                    NEW YORK, *November 8th,* 1855.

    " Eight months after date we promise to pay to the order
of the Atlas Mutual Insurance Company, for value received,
fourteen hundred dollars, payable at the National Bank.

                              " WELLINGTON & ABBOTT."

The endorsement thereon was as follows, being made by
the secretary of the Atlas Mutual Insurance Company:

    "Pay ――― for account of the Atlas Mutual Insurance
Company.                    " GEO. H. TRACY, Secretary."

The grounds of the motion for a non-suit (which motion
was granted), were that the endorsement restricts the
plaintiffs' title, and creates them trustees of the note; and
also, that there is no resolution of the board of trustees
authorizing the transfer or substitution.

The resolution here referred to does not appear in the
case, but is supposed to be that referred to in the eighth
section of the first article of that title of the revised
statutes which speaks "of monied corporations." (1 Revised
Statutes, 591.)   That section is as follows:

    "Section 8. No conveyance, assignment or transfer *not
authorized by a previous resolution of its board of directors*
shall be made by any such corporation of any of its real
estate, *or any of its effects*, exceeding the value of one
thousand dollars; but this section shall not apply to the
issuing of promissory notes, or other evidences of debt by
the officers of the company in the transaction of its ordi-

nary business, nor to payments in specie or other current money, or in bank bills, made by such officers; nor shall it be construed to render void any conveyance, assignment or transfer in the hands of a purchaser for a valuable consideration and without notice."

The plaintiffs introduced considerable additional evidence beyond proof of the note and the endorsement, which it is supposed was intended to sustain one or more of the following propositions, to wit:

1. That the validity of the transfer of the note did not depend upon the section of the revised statutes just quoted, but upon section eight of the charter of the Atlas Insurance Company. (Session Laws 1843, Ch. 92, § 8.)

2. That the transfer of the note by the Atlas Insurance Company to the plaintiffs was justified by and in accordance with the section of the charter just referred to.

3. That the special endorsement of the note above mentioned, was designed to transfer the whole interest in the note to the plaintiffs, and was effective for that purpose, and was not designed as a restrictive endorsement for the benefit of the defendants.

In support of these propositions, the plaintiffs introduced evidence, the substance of which is hereafter given. The note in question was given to the plaintiffs for premiums upon an open policy of marine insurance. It was transferred to the plaintiffs in substitution for other notes delivered to them as collateral security. On the 30th day of July, 1855, the Atlas Insurance Company borrowed from the plaintiffs their notes for $10,000, payable in four months, which the company used. The plaintiffs claim that this sum was borrowed to enable the company to pay marine losses, but this is rather an inference from the testimony than the result of any direct proof in the case. To secure this indebtedness to the plaintiffs, the company gave them their notes for a like amount ($10,000), maturing about the same time, and secured the same by the transfer

of premium notes held by them, amounting to the sum of $12,594.19. The notes thus loaned by the plaintiffs to the company were paid by the plaintiffs.

On the 27th day of December, 1855, the plaintiffs wanting notes which they could use, returned to the company some of the notes originally received by them as collateral security, and others to the amount of $4,354.50 were substituted in their place. Among those thus substituted was the note in suit. There was no resolution of the board of trustees on the minutes in regard to this transaction. The secretary thought there was a resolution of the finance committee, and that they arranged the original transaction or sanctioned it before it was done, and that most of the trustees were aware of it, and approved it. None of them ever disapproved of it. The substitution was made by the direction of the president and vice president of the company.

There was some evidence in regard to the pecuniary condition of the company at the time of these transactions, but the inference from the evidence on the whole is, that they were embarrassed rather than insolvent, and that they did not fail until an injunction was served on them, in March, 1856.

The following papers were read in evidence, as bearing upon the authority for and the mode of transfer of the note in suit:

The charter of the company (Sess. Laws 1843, ch. 92, § 8) makes section 12 of the charter of the Atlantic Insurance Company a part of its charter, and that section is as follows (Laws 1842, ch. 217, § 12):

" The company, for the better security of its dealers, may receive notes for premiums in advance, of persons intending to receive its policies, and may negotiate such notes for the purpose of paying claims or otherwise, in the course of its business; and on such portions of said notes as may exceed the amounts of premiums paid by the

respective signers thereof, at the successive periods when the company shall make up its annual statement, as hereinafter provided for, and on new notes taken in advance thereafter, a compensation to the signers thereof, at a rate to be determined by the trustees, but not exceeding five per cent. per annum, may be allowed and paid from time to time."

Under this provision there was a by-law of the company, as follows:

" The president or vice-president, with the advice and consent of the finance committee, or a majority of them, shall have authority to assign, transfer, or otherwise validly dispose of any bond and mortgages, stocks, bills recivable or any assets of the same, in order to convert the same into money, or to secure the repayment of money borrowed by the company through them, the payment of losses, or other purposes that shall have been sanctioned by the finance committee."

On the 30th October, 1855, the board of directors also adopted a resolution, which was in force when the plaintiffs surrendered their notes and received the note in suit, as follows:

" *Resolved,* That any arrangement made by the finance committee, in paying or arranging for funds to pay the pressing liabilities of the company, and to sustain the institution until other means can be provided, if they shall make themselves or their friends personally liable, the same shall be considered and treated as confidential, in any event equal in all respects to the amount of $40,000 already subscribed by the friends of the company for its relief."

The secretary testified that the note in suit was transferred and endorsed in the usual way, and that the company had transferred and endorsed the notes held by them. in this way, to a large amount.

*W. Curtis Noyes,* for the appellants.

*Gilbert Dean,* for the respondents.

HOGEBOOM, J.   It is fair to presume that the court granted the motion for a non-suit on the grounds presented there and here by the counsel for the defendants, and stated in the case; and I shall therefore limit myself to the discussion of the two propositions embraced in that motion.

If this case is governed by the eighth section of the first article of the title of the revised statutes which relates to "moneyed corporations" (1 Rev. Stat. 591), it is not necessary to decide whether the plaintiffs were properly non-suited.   There was no previous resolution of the board of directors, authorizing the transfer of the note in question; nor were the plaintiffs purchasers of the paper for a valuable consideration without notice, within the exception to the general effect of that section.   As the plaintiffs dealt directly with the Atlas Insurance Company, and not with a supposed *bona fide* holder of their paper, they are chargeable with knowledge of the statutory prohibition in question avoiding a transfer not sanctioned by a previous resolution of the board, and are not within the protection of that class of dealers who purchase *bona fide* from those presumed to have a good title to the paper which they sell.

But I think this case must rest on the charter of the company, granted in 1843, which adopts a section of the charter of the Atlantic Insurance Company, granted in 1842.   (Laws of 1843, Ch. 92, § 8; Laws of 1842, Ch. 217, § 12.)   These acts were passed subsequent to the revised statutes, and so far as they prescribe a rule for the transfer of paper held by the company, different from that declared by the revised statutes, they must be deemed to overrule the former law.   This was distinctly held in a case in this respect precisely similar—that of *Howland* v. *Myer* (3 Comst. 290.)

Nor is this in conflict with the decision of this court in *Houghton* v. *McAuliffe and others*, in December, 1863. There was nothing in the latter case to show that there was any provision in the charter of that insurance company

which conflicted with the rule laid down in the revised statutes; and the latter were therefore properly held to be applicable.

We must, therefore, examine the case with reference to the charter of the Atlas Insurance Company. That charter, in regard to notes received for premiums in advance, authorized the company to negotiate them for the purpose of paying claims, or otherwise, in the course of its business. The note in question must be regarded as a note of that character. It expressly appears that the note was given for premiums on an open policy of marine insurance, and it could not well be, therefore, a note of any other description than those mentioned in the charter. I think we must also assume that the notes for which it, with others, was substituted, in December, 1855, were negotiated for the purpose of paying claims, or otherwise, in the course of its business. The purpose of the *negotiation* of the notes is not very distinctly stated, but taking the presumptions of law and the fair inferences from the facts proved, we are authorized to conclude that they were negotiated in the course of its business—its lawful business. If the notes originally negotiated were thus lawfully transferred to the plaintiffs, I do not see that the surrender of those and the substitution in their place of others (including the note in suit) for the convenience and accommodation of the parties, can be unlawful. It was but an exchange of security, all of which, as well those originally taken as those subsequently substituted, were, so far as we can discover, of a character which made it proper, under the section in question, for the company to negotiate them for the purposes of its ordinary business. In regard to all those matters, as to the notes being taken for premiums in advance or to their being negotiated for a purpose authorized by the charter, inasmuch as no objection was made to them on the trial in these respects, we are authorized to assume that they came directly within the scope of the

section under consideration. So regarded, their transfer was lawful, and the title of the plaintiffs thereto indisputable, within the case of *Howland* v. *Myer* (3 Comst. 290), and if the court below non-suited the plaintiffs on this ground, I think it must have been from inadvertence, in not considering the case last referred to in connection with the provisions of the present charter.

The mode of endorsement is supposed also to present an insuperable difficulty in the way of the transfer of the legal title to the paper to the plaintiffs. It is sufficiently clear that the object of the endorsement was to pass an absolute title to the plaintiffs. The secretary states that this was the *usual* mode of transfer, and that notes to a *large amount* have been thus transferred by the company. The nature of the transaction detailed in the evidence, also shows that the intention of the parties was to pass an absolute and unrestricted title to the paper. The endorsement itself, though slightly ambiguous on its face, is susceptible of that construction, and fairly indicates either that the secretary endorsed the note for or on account of the company, or what is more probable, that the plaintiffs on receiving the sum due thereon, were to credit the same to the account of the company, as between the transferee and such company.

In this case no question is made as to the intention of the transfer between the company and the plaintiff. And on the facts shown, I think the company could not be heard to dispute the plaintiffs' title. Clearly the defendants on such an endorsement, could not refuse payment to the plaintiffs, whether the name of the payee in the endorsement remained *in blank*, or was filled in with the names of the *plaintiffs*. It was, I think, a transfer of the title to them only to be defeated, on a prosecution of the note, by proof that the plaintiffs were not the real *parties in interest*.

The judgment should be *reversed*, and a new trial granted, with costs to abide the event.

All the judges concurring, judgment reversed.