GULF PIPE LINE CO. et al. v. LASATER et al. (No. 5800.)

(Court of Civil Appeals of Texas. San Antonio. March 14, 1917. Rehearing Denied April 11, 1917.)

1. CORPORATIONS ⇐⇒382½, New, vol. 16 Key-No. Series—NATURE—PRIVATE CORPORATIONS —PUBLIC UTILITIES CORPORATION.

While a corporation formed to supply light, ice, water, and power to the people of a town is within the class denominated "private corporations" by the statute, its objects are such as clothe it with a quasi public character and subject it to certain rules governing public corporations.

2. CORPORATIONS ⇐⇒446—SALE OF PROPERTY —STATUTE—QUASI PUBLIC CORPORATIONS— RIGHT TO QUESTION.

Rev. St. 1911, art. 1140, § 4, empowering a corporation to sell, mortgage, or otherwise convey such real and personal estate as the purposes of the corporation shall require, applies to a quasi public corporation, and no one but the state can question the propriety of the directors' determination of what is required by the purposes of the corporation.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1785.]

3. CORPORATIONS ⇐⇒375—SALE OF PROPERTY— STATUTE—PAYMENT OF DEBTS.

Under Rev. St. 1911, art. 1140, § 4, authorizing a corporation to sell, mortgage, or otherwise convey its property as the purposes of the corporation shall require, a quasi public corporation may sell its property to the owner of practically all its stock to discharge the debt which it owed him, because of payment by him of all existing debts of the corporation, where the purchaser continued to perform the public services, since there is no personal trust involved in the grant of corporate powers under a general incorporation law, and there can be no question but that the payment of corporate debts is a corporate purpose.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1525–1529.]

4. CORPORATIONS ⇐⇒375—SALE OF PROPERTY — POWER OF LEGISLATURE — QUASI PUBLIC CORPORATIONS.

In the absence of constitutional prohibition, the Legislature can empower quasi public corporations to transfer their franchises and all their property, either by absolute sale or by lease or mortgage, though the transfer may disable them from performing their duties to the public.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1525–1529.]

---

⇐⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

5. EVIDENCE ⬤═69 — PRESUMPTIONS — REGULARITY OF SALE.

"It will be presumed that the sale of property of a public service corporation was made under the statute authorizing such sale until the contrary affirmatively appears.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 90.]

6. CORPORATIONS ⬤═542(3)—SALE OF PROPERTY — VENDOR'S LIEN — VALIDITY — SUBSEQUENT PURCHASERS WITH NOTICE.

The fact that the owner of practically all the stock of the corporation, who had advanced the money to pay all the corporation's debts, took a conveyance of its property to himself for the purpose of retaining a vendor's lien on conveying it to another, and after the sale delivered the corporate stock to the purchaser, who reconveyed the property to the corporation, does not make the vendor's lien invalid as against subsequent creditors who had notice of the facts.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 2156.]

7. CORPORATIONS ⬤═439—SALE OF PROPERTY —QUASI PUBLIC CORPORATIONS—STATUTE.

Acts 34th Leg. c. 79, authorizing consolidation of public service corporations by the sale of the property of one to another, does not prevent a quasi public corporation from selling its property to pay its debts.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1774.]

8. CORPORATIONS ⬤═547(1)—SALE OF PROPERTY — RIGHT TO QUESTION — SUBSEQUENT CREDITORS.

Subsequent creditors of a corporation have no right or authority to question the validity of a sale by the corporation of its property.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 2178.]

9. CORPORATIONS ⬤═542(3) — FRAUDULENT CONVEYANCES—PAYMENT OF DEBTS—SUBSEQUENT CREDITORS.

Where a public service corporation had been losing money and was in debt and without credit and sold its property to its principal stockholder, who paid its debts and sold the property to another, subject to a vendor's lien retained by the stockholder, the lien was not fraudulent as against subsequent creditors of the corporation after the purchaser had acquired the stock and reconveyed the property to it.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 2156.]

10. VENDOR AND PURCHASER ⬤═260(1)—VENDOR'S LIEN—PRIORITY—LIEN FOR MATERIAL.

Subsequent creditors who furnished fuel and oil to a public service corporation, but who did not fix any lien in the manner provided by statute, are not entitled to preference over the pre-existing vendor's lien.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 664–666.]

11. RECEIVERS ⬤═162—PAYMENT OF CLAIM—PREFERENCE—STATUTE.

Rev. St. 1911, art. 2135, giving a preference to certain claims out of moneys coming into the hands of the receiver which are earnings of the property, gives no preference lien over prior liens on the corpus of the property, where there were no earnings.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. § 277.]

12. RECEIVERS ⬤═154(1) — PAYMENT OF EXPENSES—PROTESTING LIEN CREDITOR.

The holder of a vendor's lien on the property of a corporation for which a receiver was appointed over the lienholder's protest, at the suit of subsequent creditors not entitled to preference under Rev. St. 1911, arts. 2135, 2138, and 2142, cannot be compelled to pay the costs of the receivership, where the property was operated at a loss, so that there were no earnings, but such costs, including the compensation of the receiver, must be taxed against the plaintiffs.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. §§ 279–281.]

13. VENDOR AND PURCHASER ⬤═231(17)—VENDOR'S LIEN — CONSTRUCTIVE NOTICE — STATUTE.

Under the express provisions of Vernon's Sayles' Ann. Civ. St. 1914, art. 6828, the record of a deed reserving a vendor's lien put subsequent creditors on a notice of the existence of the lien.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 536.]

14. RECEIVERS ⬤═154(1) — COSTS — IMPROVIDENT APPOINTMENT.

Where a public service corporation was not shown to have been improperly managing its plant, though it was losing money, as it had always done under any management, the appointment of a receiver at the suit of creditors, made in vacation without notice and hearing, for which no good reason was shown at the trial, was improperly and improvidently made, and it was not an abuse of the court's discretion to assess the costs thereof against the plaintiffs.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. §§ 279–281.]

15. RECEIVERS ⬤═162 — JUDGMENT AGAINST RECEIVER—PREFERENCE—STATUTE.

Within Rev. St. 1911, arts. 2138, 2142, giving judgments and claims against a receiver for causes of actions arising during the receivership a lien on the property superior to the mortgage lien, the clause "the mortgage lien" refers to the mortgage which the suit was brought to foreclose, mentioned in article 2128, and the preference is given only over such mortgage, not over liens or mortgages in favor of those who did not institute the receivership proceedings.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. § 277.]

16. RECEIVERS ⬤═154(1)—JUDGMENT AGAINST RECEIVER — PREFERENCE—STATUTE—"MORTGAGE ACTION."

Within Rev. St. 1911, art. 2152, providing that all judgments, claims, or causes of action, when determined, existing against any corporation on the appointment of a receiver, shall be paid from the earnings of the receiver to the exclusion of mortgage action, and shall be a lien on such earnings, "mortgage action" refers to the suit of persons who instituted the action on a mortgage, and subordinates such mortgage to the expense of running the business by the receiver.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. §§ 279–281.

For other definitions, see Words and Phrases, Second Series, Mortgage Action.]

17. RECEIVERS ⬤═154(1)—EXPENSES—PREFERENCE—QUASI PUBLIC CORPORATIONS.

Where a receiver is appointed for a public service corporation in order to perform its duties to the public by continuing the operation of the plant, the expenses of operation by the receiver are given preference over a lien on the property held by one who did not institute the action in which the receiver was appointed.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. §§ 279–281.]

18. RECEIVERS ⬤═154(1)—EXPENSES—PREFERENCES—AUDITING BOOKS.

The expense of auditing the books of a public service corporation during receivership proceedings is not an expense necessary for the operation of the plant which would be entitled to

preference over a lien, but is taxable against the plaintiffs as costs.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. §§ 279–281.]

19. RECEIVERS ⬅154(1)—EXPENSES OF OPERATION—VENDOR'S LIEN—PRIORITY.

A vendor who has abandoned his right to rescind the sale and recover the land, and has elected to sue for his debt and foreclose his lien, has merely a mortgage, not the legal title, and his lien is subject to the expenses of operation of a public service plant by a receiver.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. §§ 279–281.]

Appeal from District Court, Brooks County; V. W. Taylor, Judge.

Suit by the Gulf Pipe Line Company and others against the Falfurrias Power Company, Ed. C. Lasater, and others, in which certain creditors of the defendant company intervened after the appointment of a receiver. From a judgment decreeing the vendor's lien of Lasater superior to all other claims except one on certain specifically named property, and ordering that his bid for the property be credited on the notes held by him secured by the lien, the plaintiffs and intervener appeal. Reformed and affirmed.

H. D. McDonald and E. P. Scott, both of Corpus Christi, D. Edward Greer, of Houston, A. F. Jatho, of Beaumont, H. L. Stone, Jr., of Houston, Mann & Henry, of Laredo, and Kleberg, Stayton & Picton, of Corpus Christi, for appellants. G. R. Scott and Boone & Pope, of Corpus Christi, Dougherty & Dougherty, of Beeville, and N. C. Abbott, of Houston, for appellees.

FLY, C. J. At the instance of the Gulf Pipe Line Company and the Gulf Refining Company, claiming to be creditors of the Falfurrias Power Company, a public service corporation supplying light, ice, water, and power to the people of Falfurrias, a receiver of the corporation in the person of Edward Cubage was appointed, who qualified and took possession of and operated the property for about 10 months. The receivership was obtained in a suit instituted by the Gulf Pipe Line Company and the Gulf Refining Company. On November 16, 1912, Cubage, under and by virtue of the order of the court and by agreement of the parties who applied for and obtained the receivership and other creditors, conveyed all of the property to Ed. C. Lasater, who was a defendant in the suit, and who claimed a vendor's lien on the property. The sale was reported and regularly confirmed by the court. The purchase price was secured by Lasater with a bond. In the answer filed by Lasater he alleged that on February 18, 1911, he was the owner and in possession of all the property of the Falfurrias Power Company, by virtue of a valid conveyance of the same from said corporation, as evidenced by a deed of date named; that on the same date he conveyed the property to G. W. Smith for a considera-

tion of $50,000, of which $31,000 was paid, and the balance of $19,000 was evidenced by three promissory notes executed by Smith, which notes were secured by a vendor's lien on the lands and other property described in the deed of conveyance; that the notes had never been paid and the lien was valid on all the property. It was further alleged that after Smith bought the property he conveyed it to the corporation which assumed the payment of the notes given by Smith to Lasater, and which had not been paid. He prayed that an injunction, sued out against him by the Gulf Pipe Line Company and the Gulf Refining Company, be dissolved, and that he be granted the right to foreclose his lien or rescind the contract and take possession of the property. A number of parties joined in a motion to vacate the order appointing a receiver. The motions to dissolve the injunction and to vacate the receivership were overruled, but the court modified the injunction so as to permit Lasater to institute and prosecute any suits against the receiver or the power company and receiver, provided he should not interfere with the possession of the property or its operation by the receiver.

Numbers of parties, claiming to be creditors of the power company, intervened in the suit, and Lasater filed an amended answer, setting out fully the facts concerning the formation and chartering of the power company; that he sold to the corporation land for $38,000 in capital stock of the corporation, upon which the plant was erected, and that he became the owner of all the shares of stock except 2, which were owned by Allen and Miller, who were the other corporators. After the corporation had been in existence about 3½ years, the sales hereinbefore mentioned were made by the corporation to Lasater, by the latter to Smith, and by Smith to the corporation. It was alleged that Smith, believing it to be best to have the business of ginning, furnishing light, heat, and water incorporated, and desiring to avoid the expense of obtaining a charter, requested Lasater to transfer to him the stock of the company, which was done.

The sale by the receiver was made with the consent of Lasater, the plaintiffs, and a number of interveners, and Lasater became the purchaser at the sale, which, as before stated, was confirmed by the court.

The trial of the cause was begun before a jury, but after proceeding for a while, by agreement of all the parties, the jury was discharged and the cause was tried by the court, resulting in favor of the plaintiffs, the Gulf Pipe Line Company and Gulf Refining Company, for their debts against the corporation and in favor of the interveners, of which there were quite a number, for their several debts, in favor of Lasater as against the plaintiffs, in his favor as against Smith and

---

the power company for the full amount of the notes and the foreclosure of the vendor's lien, decreeing the same to be superior to all other claims, except that of the York Manufacturing Company on certain specifically named property. It was further ordered that Lasater's bid at the receiver's sale should be credited on the notes held by him, and that a certain bond given by him for the purchase money at said sale should be canceled. The plaintiffs, Gulf Pipe Line Company and Gulf Refining Company, and interveners, First State Bank of Corpus Christi, Magnolia Petroleum Company, Duke Wittenbert, Ed Cubage, receiver, G. W. Smith, Rio Grande Coal Company, and Santo Tomas Coal Company, perfected an appeal to this court.

The plaintiffs in the lower court and six interveners have, as appellants, filed elaborate briefs, the first presenting 12 assignments of error on 67 printed pages, and the latter, 74 assignments on 179 pages of printed matter. We will consider the brief of the plaintiffs first, the consideration of their claims disposing of assignments of error of the interveners raising the same points. The appellants, the Gulf Pipe Line Company and the Gulf Refining Company, will be designated plaintiffs, for convenience, and the other appellants will be designated as interveners. Ed. Lasater and the York Manufacturing Company are the only appellees who have filed briefs in this court.

The first, second, third, and fourth of plaintiffs' assignments of error assail the conclusions of the court that the deeds of the Falfurrias Power Company to Lasater and the latter to Smith were valid and passed the title to the properties, and in holding that Lasater had a valid vendor's lien on the properties of the power company, and in crediting the $15,000 bid by him on the property at the receiver's sale, on his debt against the property. The only point raised by the four assignments is as to the power and authority of a corporation like the Falfurrias Power Company to convey all of its property to an individual to be used by him in any manner he may see proper. As bearing upon this point, the statement of facts shows that the power company was chartered in 1907, with a capital stock of $75,000, divided into 750 shares of the par value of $100 each. One of the purposes of incorporation was "the manufacture and supply to the public, by any means, of ice, gas, light, heat, water and electric motor power," and at the time the deed was executed to Lasater the corporation was "engaged in the furnishing of water, electric lights and ice to the citizens of Falfurrias." There was no other electric plant in Falfurrias, and no other water or ice plant serving the public. The property conveyed by the corporation to Lasater comprised all of its assets. The only consideration paid by Lasater to the corporation was $17,000 of debts of the corporation paid by him. As to the remaining $33,000 of the money agreed to be paid by Lasater, he stated in his answer:

"That said consideration was not paid by said Lasater to said corporation in the sense that it was actually turned into the treasury of the corporation, but, with the consent of all stockholders and directors, was retained by said Lasater in the sense of a dividend paid to him, and to which he was entitled as owner of all the stock, after payment of all indebtedness."

Lasater owned 498 shares of the stock of the nominal value of $49,800, the other $200 worth of stock being owned by Lawrence D. Miller and James J. Allen. Only 500 shares of stock had been issued. On the same day, that is, February 18, 1911, on which the property was conveyed by the corporation to Lasater, he conveyed it to G. W. Smith for a recited consideration of $52,000, of which $30,986.21 was recited as paid in cash, and the balance of $19,013.79 was evidenced by three notes of $6,337.93 each, executed by Smith to Lasater, and a vendor's lien was reserved on the property to secure payment of the notes. The $30,986.21 was not paid in cash, but in land conveyed by Smith to Lasater. The latter, on March 15, 1911, delivered his shares in the corporation to Smith. On April 19, 1911, Smith conveyed the property to the corporation for a recited consideration of $52,000, of which it was recited that $32,986.21 was paid in cash and $19,013.79 was paid in an assumption of the three notes executed by Smith to Lasater.

At the time that the corporation made the deed to Lasater, it had no money or other assets except its plant which had been running at a continuous loss, and it owed Lasater $17,000 for the debts that he paid in cash for it. At that time he could have obtained judgment against the corporation, and have sold its properties for his debt and bought it in at forced sale. It was at that time completely at the mercy of Lasater, and the question arises as to what right subsequent creditors have for inquiring into and attacking a sale made by the corporation to Lasater to pay off the debts it owed to him. At that time they had no interest whatever in the corporation, and it would seem that they have not acquired in any way any right or authority to question the method used by the corporation in paying off its debts.

[1] While such corporations as we are considering belong undoubtedly to the class denominated by the statutes of the state as private corporations, courts of this and other states hold that the purposes of their incorporation are such as to clothe them with a quasi public character and subject them to rules to some extent governing public corporations. City Water Co. v. State, 33 S. W. 259, and authorities cited.

[2] The charter of such quasi public corporation might be forfeited by the state, because of a sale of its property, not made "as the

purposes of the corporation shall require," but it is given the power and authority by section 4, art. 1140, Rev. Stats., "to purchase, hold, sell, mortgage or otherwise convey such real and personal estate as the purposes of the corporation shall require." Who would be the judge as to what the purposes of the corporation would require? Would it not be primarily the board of directors, and in case of abuse of their discretion, no one but the state would have the power and authority to inquire into the reasonableness or propriety of what the board of directors deem that "the purposes of the corporation shall require."

[3] The statute empowers private corporations to "sell, mortgage or otherwise convey" its real estate, and it has been held by the Supreme Court that an electric light and power company could give a deed of trust, not only on its real property, but its franchise, to secure a promissory note, and the court, in so holding, took occasion to say:

"The article cited in terms empowers all corporations organized under the provisions of that title of the Revised Statutes to mortgage their property, and, whatever may have been decided in other states with reference to similar statutes, we see no sufficient reason for holding that it was intended that such as should be created for a public purpose—as for furnishing lights to a city and the like—should be excepted from the operation of the general law. There is no personal trust involved in the grant of corporate powers under a general law of incorporation which authorizes all citizens of the state to create a corporation for any one of specified objects, by simply filing articles of incorporation with the secretary of state; and we do not see why the public interests may not be as well subserved by the purchasers of the property of such a corporation as by the corporation itself, when it becomes confessedly unable or unwilling to pay its debts."

The language quoted was used in refusing a writ of error in the case of Threadgill v. Pumphrey, 87 Tex. 573, 30 S. W. 356, the opinion of the Court of Civil Appeals being found in 9 Tex. Civ. App. 184, 28 S. W. 450. It was held in that case by the Court of Civil Appeals, in complete consonance with the statute, that there are only two kinds of corporations recognized by the statute, private and public, and the court said:

"The corporation sued in this case, then, is classed by the statute as a private corporation. It is immaterial, however, whether the defendant company is or is not strictly a private corporation. It is so designed by the statute, and we must look to the statute for the powers of such corporation. * * * We are not concerned about what the powers of a corporation of a quasi public character may be at common law. The Taylor-Electric Light, Gas & Power Company is given by the statute full power to mortgage all its property and income to pay the debt it contracted to pay the Taylor National Bank. Such power is not to be implied; it is expressly granted by the Legislature; and we need not extend the inquiry any further."

The same reasoning is applicable to a sale for the payment of debts, and there is no force or strength in the contention that the public might suffer by the sale. As said in the Pumphrey Case:

"There is no special trust to incorporators under the general laws of this state. One set of men can become such incorporators as well as another by complying with the statute creating such corporations."

The power to mortgage is only coextensive with the power to alienate absolutely. Clark & Marshall Priv. Corp. § 162c1; People v. Ballard, 134 N. Y. 269, 32 N. E. 54, 17 L. R. A. 737.

In this case there was no effort or intention to impair the usefulness of the corporation, and there was not a moment's intermission in its efforts to serve the public. When Lasater conveyed the property to Smith, it was with the avowed purpose and intention that Smith should serve the public as before, and he did so, the plant under his administration and that of the receiver losing money with equal facility to that of the corporation before it sold to Lasater. If, as we think, the corporation had the power to sell the property to Lasater, he had the power to sell to Smith, and the latter could reconvey to the corporation. When the corporation conveyed to Lasater it owed him $17,000, which was assumed by Smith, and the corporation was then free of debt. It had not, by the sale to Lasater, ceased to exist, nor when the property was transferred to Smith, and it was not dissolved thereby. Clark & Marshall Priv. Corp. §§ 165–310; City Water Co. v. State, 88 Tex. 600, 32 S. W. 1033. The public was in no manner injured by the transfer of the property.

We have treated the affairs of the corporation, in question, as though they were those of a corporation denominated by certain opinions "quasi public corporations." The statutes of Texas classify corporations as either public or private, and then define them. No such class as quasi public corporations is recognized by the statute, but some private corporations organized under title 25 of the Revised Statutes are given the power of eminent domain, such as gas, electric current, and power corporations and sewerage companies. Chapters 21 and 22, tit. 25, Rev. Stats. This it has been held makes them quasi public corporations which owe special duties to the public, which they cannot evade by an alienation of their property. Clark & Marshall, § 162. It has never been held, however, when legislative authority is given, that a sale to pay debts was not admissible, and no authority has been discovered which would deny that the payment of debts was not for the purposes of the corporation.

[4] There can be no doubt that, in the absence of constitutional inhibition, the Legislature can clothe quasi public corporations with the authority to transfer, either by absolute sale and conveyance or by lease, or to mortgage, their franchises or special privileges, and all of their property, though the transfer or mortgage may disable them from performing their duties to the public. Clark & Marshall Priv. Corp. § 163b.

[5] The power to sell given by the Texas statute is plain and explicit, and it will be presumed that the sale was made under the statute until the contrary affirmatively appears. Wood v. Wellington, 30 N. Y. 218.

[6] Let it be conceded that the corporation, Lasater, and Smith agreed that the corporation should convey all of its property to Lasater, he to convey immediately to Smith, and Smith afterwards to reconvey to the corporation, in order that a vendor's lien might be created against the corporation property; there being no other creditors of the corporation at that time. Who was wronged or injured by the transaction? Certainly not subsequent creditors, for they had notice, in dealing with the corporation, that Lasater had and held a vendor's lien against the property. The corporation could undoubtedly, under the statute, have executed a mortgage on all the property to Lasater, and it would have interfered with subsequent creditors just as much as the vendor's lien. The mortgage lien would have been fully as binding on the property as the vendor's lien, and it would not matter whether the lien was created directly or in the way in which it was created. We do not intimate that the vendor's lien was given in a roundabout manner, for the circumstances seem to indicate that the trade between Lasater and Smith was bona fide, and that Smith lost $31,000 worth of land by the deal. If the sale to Lasater was valid, undoubtedly the one to Smith was valid, and his reconveyance to the corporation was made under the view that it was the only way to obtain the advantages of the charter of the corporation.

There is nothing in Hardware Co. v. Manufacturing Co., 86 Tex. 143, 24 S. W. 16, 22 L. R. A. 802, that is in conflict with our holding that the sale to Lasater was authorized by the statute. The corporation in that case sought to prefer certain creditors by its sale, which was condemned by the court, but it is not intimated that if all the stockholders agreed to the sale and there were no creditors except the purchaser, the sale would be invalid, especially when the owner of the corporation never intended that it should cease business and it did not in fact do so for one moment. The moment had arrived in the existence of the corporation when it could not perform its duties under its charter for the lack of money and the only opening presented for it to exist any longer was to get some one to pay its debts and make a sale of the property to him. The necessities and exigencies of the hour required the sale, or dissolution would necessarily have resulted. The sale did not prevent the fulfillment of public duties, but it enabled the corporation to continue to perform those duties.

[7] The law passed by the Thirty-Fourth Legislature on March 22, 1915 (Acts 34th Leg. c. 79), merely authorized the sale of the properties of one electric light, gas, steam, water, or street railway company to another, in an incorporated city, town, or village, and has no reference to other corporations, and has no tendency whatever to show that a private corporation could not sell its properties to pay its debts. It has been practically decided by the Third Court of Civil Appeals that such sales are valid and binding. National Bank v. Scott, 19 Tex. Civ. App. 22, 45 S. W. 26. When a writ of error was granted in the case, nothing contrary to the ruling on the point in question was held by the Supreme Court. Scott v. National Bank, 97 Tex. 31, 75 S. W. 7, 104 Am. St. Rep. 835. Subsequent creditors did not figure in that case in endeavoring to set aside the sale.

[8] Recurring to the proposition that the subsequent creditors have no right or authority to question the validity of the sale, we find ample authority to sustain such a proposition. In Thompson on Corporations, § 6030, it is stated that:

"In general it may be said that one whose rights are not injuriously affected by reason of the fact that a corporation is acting in excess of its powers or beyond the warrant of law has no standing in court to complain of the same."

So, in Eno v. Crooke, 10 N. Y. 60, it was held:

"None but the corporation or its stockholders or creditors can impeach a transfer of property by the corporation for the want of the previous action of the board of directors and then only by direct action brought for that purpose. Strangers, the debtors of the bank, and others, have no interest in the question, and cannot go back of the assignment and collaterally impeach the transfer for the want of the formalities which have been imposed by statute for the benefit and protection of others."

We have seen no authority that authorizes an attack by the plaintiffs and interveners herein on the sale made by the corporation when they could have no possible interest in the affairs of the corporation at that time. The corporation practically belonged to Lasater, and the holders of the only 2 shares not owned by him agreed to the sale. Irr. Co. v. Hutchins, 21 Tex. Civ. App. 274, 52 S. W. 101. He was the president as well as owner of the corporation; and, in the absence of of any creditors, except himself, what right have strangers to the proceeding to attack the conveyance? Marsters v. Oil Co., 49 Or. 374, 90 Pac. 151, 12 L. R. A. (N. S.) 825; Clark & Marshall Priv. Corp. p. 2358; 5 Thompson Corp. § 6165.

Railroad companies in Texas are not organized under the general statute as to private corporations, but under statutes applicable to them alone, and, of course, decisions as to their powers, duties, and liabilities cannot be peculiarly applicable to private corporations organized under the general statute. The private corporation organized under the general statute has its powers defined therein, and those statutes alone must be consulted.

[9] The plaintiffs' fifth assignment of error assails the action of the court in hold-

ing that Lasater, by reason of his vendor's lien on the property of the corporation, had a superior lien to all parties to the suit on the proceeds of the sale of the properties made by the receiver, because if the sale of the property by the corporation to Lasater was not absolutely void, it was a fraud on the corporation perpetrated by its president. The sixth assignment is a corollary to the fifth, and, so far as the contract being void is concerned, has been disposed of adversely to plaintiffs by our discussion of the first four assignments of error. As to the charge of fraud, it is not supported by allegation or proof. There was no allegation that any fraud was perpetrated by the sale on subsequent creditors. They are in no position, under allegation or proof, to attack the sale, and the fifth and sixth assignments of error are overruled. There is nothing in the testimony that evidences fraud towards the corporation or subsequent creditors. The testimony tends to show, on the other hand, that the corporation was rapidly losing money, that its credit was gone, and that it was in debt. Lasater paid off the debts and placed the corporation in a position to prosecute the business for which it was created. Plaintiffs became creditors of the corporation after the sale, with full knowledge of all the facts. The decisions of federal courts cited by plaintiffs leave out of consideration the question of notice to subsequent creditors, who have acted, as have these plaintiffs, with full knowledge of the facts. We prefer the position held by Texas courts. The case of Darcy v. Ferry Company, 196 N. Y. 99, 89 N. E. 461, 26 L. R. A. (N. S.) 267, 134 Am. St. Rep. 827, has no applicability to the facts of this case. In that case there were creditors at the time the transfer was made; in this there were none. As said in that case:

"Their omission to make adequate provision for the protection of the creditors was proof of their dereliction and good faith constitutes no defense."

In this case provision was made for the payment of all the creditors. In the case of Hamor v. Taylor Rice Co. (C. C.) 84 Fed. 393, the opinion turned on a lack of statutory authority to sell, and of course that is not applicable in a case in which there is statutory authority.

The cases of Atlanta Association v. Smith, 141 Wis. 377, 123 N. W. 106, 32 L. R. A. (N. S.) 137, 135 Am. St. Rep. 42, and Clark v. Machine Co., 151 Mich. 416, 115 N. W. 416, have no pertinency to the facts of this case, and neither have Tobin Canning Co. v. Fraser, 81 Tex. 407, 17 S. W. 25, and In re Haas, 131 Fed. 232, 65 C. C. A. 218.

[10] The sixth assignment of error is overruled. Upon what ground the receiver should have paid the debts of plaintiffs in full is not disclosed. They have no lien, and their debts were not due by the receiver, but were made before the receivership took place. The receiver was appointed at the instance of plaintiff and others. Because they may have furnished fuel and lubricating oil to the corporation did not place them in the favored creditors' class. The points raised under this assignment have been fully considered. If plaintiffs desired to fix a lien for labor or material furnished, they should have fixed their lien in the statutory manner. The cases cited by plaintiffs to sustain their claim that as current supply creditors, before the receiver was appointed, they should be given priority over other claimants, were decided under statutes different from those in Texas, and can have no force.

[11] Such claims as those of plaintiffs, even in the absence of liens, are given no preference by article 2135, Rev. Stats., in reference to preference claims in a receivership, except out of earnings, nor by any other statute of which we are cognizant.

Article 2135 gives a preference to certain claims named therein out of all moneys coming into the hands of the receiver which are earnings of the property in his hands, and, there being no earnings, but on the other hand losses, the sixth application of earnings, in which class plaintiffs would fall, can be of no avail or assistance to them. Neither would they fall into the class of those who obtained judgment against the receiver for causes of action arising during the receivership which judgments are given a lien upon all the property in the hands of the receiver superior to the mortgage lien (article 2138), nor do the plaintiffs come within the terms of article 2142, as having judgments or claims not sued on against the receiver arising during the receivership, which are given a preference lien superior to the mortgage lien. We find no statute that, under the facts in this case, would give plaintiffs any preference lien on the property of the corporation.

[12] Plaintiffs, joined by others, prayed for and obtained the receivership, over the protest of Lasater, and they should pay the costs and expenses arising from such receivership including the salary of the receiver. Houston Ice & Brewing Ass'n v. Clint, 159 S. W. 409. It would be the grossest injustice to compel the unwilling party to the receivership to pay the costs thereof. National Bank v. Campbell Co., 104 Tex. 457, 140 S. W. 430; Id., 133 S. W. 311; First State Bank v. Hubbard Farmers' Oil & Gin Co., 178 S. W. 1015; Hooven Co. v. Schriver, 184 S. W. 359. The receiver was appointed without the knowledge or consent of Lasater, and he was not called upon afterwards to appeal from the interlocutory order, nor did he lose any rights, or become liable for costs, because he agreed to the sale by the receiver. The cases last cited fully settle that point. The case of Ellis v. Vernon Co., 86 Tex. 109, 23 S. W. 858, goes a long way in breaking down and setting aside liens on property, which is afterwards placed in the hands of

'a receiver, but it does not go to the extent of holding that a lienholder, who is not a party to the receivership, can be compelled to pay the costs and expenses of an improvident receivership, and this court held in the Clint Case that he could not be so compelled. The Supreme Court, in the Clint Case, in refusing a writ (169 S. W. 411), approved the decision of this court, but put it on the ground that the corporation in that case was not a public corporation. Neither is the Falfurrias Power Company a public corporation, for the statute defines a public corporation as "one that has for its object the government of a portion of the state." The power company is a private corporation under the statute; the most that can be attributed to it are the characteristics of what courts, and not the statute, denominate "quasi public corporations." The Ellis Case is the only one in Texas that has gone to the extent of holding that a lien can be impaired or actually destroyed by using the incumbered property to pay the costs of a receivership. However, the receivership in that case was procured with the knowledge and consent of the lienholder, and that is the only ground upon which it can be justified under the laws of Texas. No statute of Texas puts any man contracting with and obtaining a lien from any but a railroad corporation in the position that the whole of the corpus of the mortgaged property may be used up in receiver's costs and the lien destroyed. Well might the Supreme Court say "that precedents for the exercise of this extraordinary power, except in cases of railway corporations, are rare," for they were so rare in Texas at that time that no such ruling, as to any but a railroad case, had ever been made until the opinion in the Ellis Case was rendered. It is stated in the opinion:

"The receivership does not destroy any liens that may have been acquired before the appointment, but the remedy for their enforcement should be sought in the court in which the whole estate is being administered."

That is not borne out in practice if the doctrine of the Ellis Case is applied, for in the case now under consideration would have absolutely eaten up the corpus of the property and destroyed the vendor's lien. This matter is fully discussed in Brewing Co. v. Clint, herein cited, and this court sees no good reason for changing that opinion. All the authorities, and reason and justice, sustain it. It seems to be contemplated in the Ellis Case that the whole of the property may be consumed in costs and expenses, for it is held that the corporation in question in that case was being operated at a loss.

We thoroughly concur in the following language, a reiteration of that used by this court in the Clint Case, used by Chief Justice Phillips in the case of Craver v. Greer, 179 S. W. 862:

"Where a lienholder procures the appointment of a receiver with the power to operate the property, which is subject to his lien, in a continuance of the business to which it is devoted, it is only just that the consequent expenses should take precedence over his lien, since it must be anticipated that such operation will be attended with cost, and possibly in excess of the income. Heisen v. Binz, 147 Ind. 284, 45 N. E. 104. The same rule should be applied to a party who, while not directly the applicant upon whose petition the receiver is appointed is privy to the action which results in the appointment. But the indebtedness of the receiver has no right of priority over the vested lien of a creditor who neither applied for the receivership nor was a party to its procurement, merely because he is a party to the suit. Metropolitan Trust Co. v. Railroad Co., 103 N. Y. 245, 8 N. E. 488."

This language seems, however, to be confined to private corporations not "affected with a public use."

In the New York Case last cited the case was one in which a railroad company was a party, and it was held that no court could authorize a receiver in a foreclosure action to pay or issue his certificate of indebtedness for the payment of labor and services in operating the road prior to his appointment, and to make certificates so issued a lien prior to the mortgage. This disposes of the claim of plaintiffs that they should have priority over all others in payment for material furnished the corporation before the receiver was appointed. On another ground sustained in the New York case, plaintiffs would have priority, and that is, they procured the receivership. It was also held in that case that, the order directing the receiver to maintain and operate the road having been made at plaintiff's request, it must abide by it, and although, as against it, the clause providing for such indebtedness should be allowed to stand, as against another mortgagee who was not a party to the application for a receiver, it should not be sustained, but such is not the position of the Supreme Court.

If Lasater had procured the appointment of the receiver, that would not have given priority to the claim of plaintiffs, because such claims were not in any sense the expenses of the administration of the property, but were debts created antecedent to the receivership. They have no standing as against the lien of Lasater.

The finding as to the value of the corporate property was immaterial, and the ninth assignment of error is overruled.

[13] The record of the deed from the corporation to Lasater and from Lasater to Smith put plaintiffs upon notice of the existence of the vendor's lien. This is statutory. Vernon's Sayles' Stats. art. 6828. This disposes of the eleventh assignment of error.

[14] The court properly found that the receivership proceedings were hastily, improperly, and improvidently brought by the plaintiffs. The running of the plant by the corporation was not endangering their inter-

ests any more than its running by a receiver would do. Plaintiffs failed to show that the plant was not being properly conducted by the corporation, but it is apparent that it was a losing concern no matter under what management it was placed. Under the facts, the receivership was granted in vacation without notice and without a hearing, and on the trial plaintiffs failed to show any good reason for the receivership. Under such conditions the plaintiffs should be liable for and compelled to pay the costs of the receivership proceeding and the compensation of the receiver. High, Receivers, § 796; Frick v. Fritz, 124 Iowa, 529, 100 N. W. 513; McAnrow v. Martin, 183 Ill. 467, 56 N. E. 168; First Nat. Bank v. Cook, 12 Wyo. 492, 76 Pac. 674, 78 Pac. 1083, 2 L. R. A. (N. S.) 192; Lane v. Washington Hotel Co., 190 Pa. 230, 42 Atl. 697. We do not think the trial judge abused the discretion in him by the manner in which he assessed the costs. This disposes of the claims of plaintiffs.

In article 2135 provision is made for the application of all moneys that come into the hands of receivers, giving in detail the order of preferences, but this can be of little importance in this case, as no money came into the hands of the receiver herein, unless it be considered that he collected the money for the property sold by him, which was by order of the court credited on Lasater's lien on the property. The article in question gives no preference liens in favor of any of the persons who are preferred in payment, except "on all of the moneys coming into the hands of the receiver which are the earnings of the property in his hands." The statute is too plain to require construction, and was never intended to give any lien that would give a preference over prior liens on the corpus of the property. Such liens may be read into the provisions of the article in question, but they are not provided for under the plain terms of a plain statute.

[15] Now in articles 2138 and 2142, certain claims are given superiority over certain liens. In the article first named it is provided:

"All judgments rendered against a receiver for causes of action arising during the receivership shall be a lien upon all of the property * * * superior to the mortgage lien."

And in the second article mentioned it is provided:

"If. at the date of the discharge of the receiver, there are any judgments or claims not sued on against a receiver arising during the receivership, and which judgments and claims not sued on are unpaid at the date of the discharge of said receiver, said unpaid judgments and unpaid claims not sued on shall be a preference lien on all of the property that was in the hands of the receiver superior to the mortgage lien."

It will be noted that it is not provided that the claims mentioned shall be superior to "all" mortgage liens, to "a" mortgage lien or to "any" mortgage lien, but "the" mortgage lien, clearly indicating a certain, definite, particular mortgage lien. The reference to "the" mortgage lien naturally suggests to the mind that the mortgage lien meant is one theretofore mentioned in the act. By recurring to prior provisions it is found that in the second subdivision of article 2128, which gives the instances in which receivers may be appointed, is included an action by a mortgagee for the foreclosure of his mortgage and sale of the mortgaged property, under certain conditions. That is the only mention of a mortgage in the act preceding the two articles being considered. We conclude, therefore, that "the mortgage" in the two articles refers to the mortgage upon which the suit was instituted, which is forced to give place to the claims named therein. That is the only reasonable construction, we think, that can be placed on the two articles.

[16] In article 2152 it is provided that:

"All judgments, claims, or causes of action when determined, existing against any corporation at the time of the appointment of a receiver, shall be paid out of the earnings of such corporation while in the hands of the receiver to the exclusion of mortgage action; and the same shall be a lien on such earnings."

What "mortgage action" may be is obscure, but in the case of National Bank v. Campbell, 104 Tex. 459, 140 S. W. 430, the Supreme Court holds that it refers to the suit of the person who instituted action on a mortgage, and that his mortgage will be subordinated to the expenses of running the business by the receiver. The court said:

"In other words, it was thought desirable to provide that where persons holding a lien upon the property of a corporation took the initiative and secured the appointment of a receiver, it should not share the earnings of the property of its plant during the receivership."

We have considered every lien given in cases of receivership, all except those mentioned in articles 2138 and 2142, being given on the earnings alone, and the liens in the two articles mentioned being given preference over no liens except those of the plaintiff who initiated the receivership proceedings. No other liens are given by the statutes of Texas in receivership cases, and it does not seem to be contemplated in any statute that a mortgage given by a private corporation, or by what is denominated a "quasi public corporation," which is unknown to the statutes, should be inferior to the costs and expenses of a receivership unless made so by the act of the mortgagee.

[17] In spite, however, of the statutes failing to declare liens inferior to claims against the receiver, the Supreme Court has dubbed some private corporations "quasi public corporations," and has held that liens on their property are inferior to any debt created by the receiver in running the business of such corporation. Ellis v. Water Co., 86 Tex. 109, 23 S. W. 858; Clint v. Houston Ice & Brewing Co., 169 S. W. 411.

After stating that a court of chancery cannot impair the force of contracts, the Su-

preme Court, in the recent case of Craver v. Greer, 179 S. W. 862, says:

"Where the court takes charge of railroads or other corporations affected with a public use, and undertakes to operate them through a receiver, the necessary debts of such operation may, as against all parties to the suit, be made a prior lien upon the income, and, if that be insufficient upon the property itself. But, as has been frequently stated, this is an extraordinary power; and it is exercised only because of the public duty resting upon such corporations and the public interest accordingly involved in the continuance of their operation."

It might be reasonably surmised that the court intended by "all parties to the suit" those who instituted the suit, and not an unwilling lienholder who was dragged in by process, but that illusion is dispelled by a subsequent citation and approval of the Supreme Court decision in the Clint Case which was written for the sole purpose of attesting adherence to the utterances in the Ellis Case.

It may be taken then as determined by the Supreme Court that a mortgage lienholder on the property of a private corporation which is "affected with a public use" has no rights that are equal or superior to the "necessary debts" of the operation of the property by a receiver. While we do not think the statutes support this holding, it seems to be firmly adhered to by the Supreme Court, and we deem it our duty to follow it. In conformity with those decisions, we, therefore, conclude that the accounts of those parties who furnished material and money to the receiver to operate the plant are superior to the vendor's lien of Lasater, as well as the lien of the York Manufacturing Company on machinery. This would include the claim of Magnolia Petroleum Company for $1,565.01, that of the First State Bank of Corpus Christi for the principal sum of $1,000, with 10 per cent. interest from May 10, 1912, of the Santo Tomas Coal Company for $68.74, and the Rio Grande Coal Company for $333.51.

[18] The account of Duke Wittenbert for auditing the books was not necessary for the operation of the plant, and his account, as well as the compensation of the receiver, would be charged to the plaintiffs as costs.

[19] It is the contention of Lasater that his vendor's lien occupies a higher position than an ordinary mortgage, because he has retained his superior title to the property, and that liens cannot be enforced or claims placed upon property to which he holds the legal title. It will be noted that Lasater has abandoned his right to rescind the sale and recover the land, and had elected to sue for his debt and foreclose his lien. Burson v. Blackley, 67 Tex. 5, 2 S. W. 668; Hubbell v. Railway Co., 59 Tex. Civ. App. 185, 126 S. W. 313; Stinson v. Sneed, 163 S. W. 989. In the case of National Bank v. Campbell, herein cited, it was held that a vendor's lien was merely a mortgage, and came within the

purview of "mortgage action" spoken of in the statute. We are of the opinion that it is of no higher dignity than any other mortgage lien.

We have considered all the matters raised by the briefs of the plaintiffs, of those interveners who filed briefs, and of the defendant, Lasater. We conclude that the judgment should be reformed so as to make the liens of the Magnolia Petroleum Company, First State National Bank of Corpus Christi, the Santo Tomas Coal Company, and the Rio Grande Coal Company superior to that of Lasater and that of the York Manufacturing Company, and that the same be foreclosed on the property of the corporation and an order of sale granted, and that in other respects the judgment be affirmed. It is also the order of this court that the plaintiffs pay all costs incurred by them on this appeal; that Duke Wittenbert and Ed. Cubage each pay the respective costs incurred by them, and that the defendant, Lasater, and intervener York Manufacturing Company pay the costs of appeal incurred by the four interveners with the superior liens.

Reformed and affirmed.