W. O. Ellis v. Vernon Ice, Light, and Water Company.

No. 111.

1. Receivers may be Authorized to Incur Debts Binding Corpus of the Property.

The power to authorize a receiver appointed by a court of equity to create debts, and to make them a charge upon the corpus of the estate, exists in the administration of other corporations equally with railway corporations..................................................... 111

2. Expenses of Receivership—Running Expenses.

The expense of administering and preserving the property in hands of a receiver is to be charged, first upon the net income, and if that be not sufficient, then upon the property itself or its proceeds upon sale. The court controlling the matter has jurisdiction to approve such items and to provide for their payment upon a sale of the property........ 112

3. Receiver's Certificates—Statute—Mortgages.

Since the Act of 1889, page 56, empowering receivers to contract debts in the administration of the estate to bind the property, all mortgages would be subject to the law giving priority to a receiver's certificates over the mortgage.......................................... .......... 113

4. Costs—Master in Chancery.

An allowance to a master in chancery in payment for his services is included under the term *costs* of court................................. 113

5. Order of Sale by Sheriff.

In a receivership, upon final order closing out the proceedings and ordering sale, it is competent to order sale to be made by the sheriff, even though a bondholder secured by deed of trust with power to sell may be party, and desire to make such sale under his trust deed .......... 114

6. Receivership as Affecting Legal Proceedings.

After property has been placed in the hands of a receiver it is not subject to levy and sale under execution. In this case the levy upon real estate existing at the time of the appointment was suspended, and a sale under such execution and levy, pending the receivership, passed no title..... ................................................... ... 115

7. Liens as Affected by Receivership.

The receivership does not destroy any liens that may have been acquired before the appointment, but the remedy for their enforcement should be sought in the court in which the whole estate is being administered .............................................................. 116

APPLICATION FOR WRIT OF ERROR to Court of Civil Appeals for Second District, in a case on appeal from Wilbarger County.

*Williams & Evans*, for plaintiff in error.

GAINES, ASSOCIATE JUSTICE.—At the suit of an unsecured creditor, the Vernon Ice, Light, and Water Company, a corporation, was placed in the hands of a receiver, upon the ground that it was insolvent. Subsequently other creditors having liens upon its property intervened, and among them the present applicant for writ of error. The ground of Ellis' intervention was that he was the holder of the bonds of the corporation amounting in the aggregate to $18,000, which was secured by a mortgage upon its property prior to all other liens. The decree of the District Court gave the plaintiff and intervenors a judgment against the company for their respective claims, ordered a sale of the property, and directed that out of the proceeds of such sale there should be paid, first, the costs of the proceedings, including commissions and expenses of making the sale; second, receiver's certificates amounting to $600; third, $200 to the master in chancery; fourth, all expenses incurred by the receiver not herein before provided for; fifth, the sum of $2404.55, which was to be appropriated to the payment in full of the judgment of the intervenors, Claver, Harris & Co., the balance of that sum to be distributed among other intervening creditors, not including, however, the intervenor Ellis; and sixth, that the remaining proceeds of the sale should be paid upon the judgment of the last named creditor. The sheriff of Wilbarger County was ordered to make the sale.

In his plea of intervention Ellis also claimed title to the lots upon which the water works were situated, by virtue of a judgment, execution, and levy made before the appointment of the receiver, and a constable's sale by virtue of such levy, made after the appointment. The court gave judgment against him upon this claim.

The applicant having appealed to the Court of Civil Appeals, that court reversed the judgment of the trial court in so far as it gave a priority over applicant's debt to the claims of creditors which accrued before the appointment of the receiver, and in effect affirmed the judgment in all other respects.

The applicant here complains of the judgment in these particulars; first, in decreeing that the receiver's certificates, the expenses of administering the property, and the costs of the proceedings should be paid out of the proceeds of the corpus of the property in preference to the mortgage bonds; second, in directing a sale of the property by the sheriff; and third, in adjudging that the title to the lots did not pass by the sale under execution.

As we understand it, the receiver's certificates were issued by authority

of the court for the purpose of keeping the company's works in operation. The property yielded no net income during the receiver's administration. On the contrary, it is to be inferred that the works were operated at a loss, at least to the amount of the certificates outstanding at the time of the trial.

Now it is urged in support of the first ground of the application, that a court of equity has no right in any case other than the receivership of the property of a railway company to authorize a receiver to create an indebtedness, and to make it a charge upon the corpus of the estate, with priority over a pre-existing mortgage. While we have no doubt that the power to authorize a receiver appointed by a court of equity to create debts is liable to great abuse, and are of opinion that in every case it should be exercised, if at all, with extreme caution, we know of no rule or principle that would restrict the power to railway cases only. In the latter cases it has been too often recognized in the courts of this country to be called in question at this time. Fosdick v. Schall, 99 U. S., 235; McIlhenny v. Binz, 80 Texas, 4. In fact, counsel for applicant do not question the power when applied to railway receiverships. But the contention is, that in such cases the authority grows out of the necessity of the situation; that railway corporations are organized for public purposes, with power to condemn private property, and that they owe a public duty which can only be discharged by the continuous operation of their roads. It is insisted that this applies to no other case. The authority granted to receivers in railway cases to create debts and to make them a charge upon the corpus of the property of the company is usually justified upon this ground; and yet it seems that there may be grave doubt whether it affords a solid foundation for the doctrine. It is not clearly seen that the courts have the power to appropriate any part of the property subject to a mortgage in the interest of the public, or to impair the mortgagee's security and the obligation of their contract, in order to discharge a duty the mortgagor owes to the public. But when a court has taken the control of property from its owners and has placed it in the hands of its receiver, it is its duty so to direct its management as to preserve its value for the benefit of all parties at interest. This may be best accomplished by a continuation of the business, although such continued operation may involve the danger of some loss.

While, as we have said, such a power should be exercised with the greatest caution, yet it can not be said that the power does not exist. To the exercise of such authority the court should have the right to make the expense chargeable upon the corpus of the property, in the event the income may not prove sufficient to pay the expense. The conduct of a business that has proved insolvent is not likely to yield a net income, and if the creditors of the receiver could only look to such revenue for the satisfaction of their claims, he would be unable to obtain credit, and the

operation of the works would be impracticable. Accordingly the rule is, that the expense of administering and preserving the property is to be charged, first upon the net income, and if that be not sufficient, then upon the property itself or its proceeds upon sale. McLane v. Railway, 66 Cal., 606; Meyer v. Johnston, 53 Ala., 237.

Now, while the circumstances which justify the appointment of a receiver, with authority to incur indebtedness in order to keep the property and business "a going concern" until the rights of all parties can be adjusted and a sale effected, do not ordinarily arise except in cases of railroad companies, no reason is seen why the same rules should not apply in other cases under like circumstances. Whether the power to appoint a receiver over the property of a railroad company, and to authorize him to operate the road, and as an incident thereto to issue certificates of indebtedness which are to be a prior charge upon the property in his hands, be maintained upon the ground of the interest of the public in the continued operation of the business or upon that of the necessity of preserving the property, we apprehend that the action of the District Court in this case must be justified upon either principle. If the public have an interest in the continued operation of a railroad, so have they in that of water works constructed for the purpose of supplying water to the inhabitants of a city. So also, if the property of a water company be placed in the hands of a receiver, it may be best preserved by continuing the operation of its works so as to maintain it a going concern.

It is true that precedents for the exercise of this extraordinary power, except in cases of the property of railway corporations, are rare; but it does not follow that the authority does not exist in other cases when the same conditions call for its exercise. In the case of a ship building company in the courts of Pennsylvania, a receiver was appointed and authorized to issue certificates to complete certain unfinished vessels. The certificates were held valid and a primary charge upon the general funds in the hands of the receiver. Appeal of Neaffie, 12 Atl. Rep., 271. We find nothing in the case of Bounds v. Railway, 50 Federal Reporter, 312, inconsistent with these views.

In this connection, it is to be observed that we do not know from the record before us what evidence the district judge had before him when he made the order authorizing the certificates to be issued. We do know that the order was made, that the certificates were issued, and that upon final decree they were directed to be paid out of the proceeds of the sale of the property prior to the mortgage debt. Whether the action of the court in awarding the certificates was proper in the first instance, we have no means of knowing. We merely hold that it had the power to make the order, and must indulge the presumption that the power was properly exercised, in the absence of any showing as to what the evidence was upon which it acted. So far as we are informed by the statement of the

case given in the conclusions of fact and the opinion of the Court of Civil Appeals, the applicant for the writ of error does not appear to have objected to the action of the court at any stage of the proceedings, until the final decree was rendered.

Let us look at the question from another standpoint. The application states that the applicant's mortgage was filed for record in September, 1890, but when it was executed the record before us does not disclose. It is to be inferred that it was after the Act of March 19, 1889, amendatory of that of April 2, 1887, went into effect. The mortgage was subject to the provisions of the existing laws. The Act of April 2, 1887, authorized the appointment of a receiver "in cases where a corporation has been dissolved, or is insolvent or in imminent danger of insolvency, or has forfeited its corporate rights." Sayles' Civ. Stats., art. 1461. The section of the act containing this provision was continued in force; but the sixth section was so amended by the Act of 1889 as to read as follows: "All moneys that come into the hands of a receiver as such receiver shall be applied as follows: first, to the payment of all court costs of the suit; second, to the payment of all wages of employes due by the receiver; third, to the payment of all debts due by the receiver for materials and supplies purchased during the receivership by the receiver, for the improvement of the property in his hands as receiver; fourth, to the payment of all debts due for betterments and improvements done during the receivership to the property in his hands as such receiver; fifth, to the payment of all claims and accounts against the receiver on contracts made by the receiver during the receivership," etc. Laws 1889, p. 56. Now if there were any doubt about the correctness of our conclusion, that upon the general principles of equity the receiver's certificates were properly chargeable against the corpus of the property of the insolvent corporation, this statute would settle the question. The certificates were contracts made by the receiver, under the direction of the court, for the loan of money, presumably for the preservation of the property, and they were properly allowed priority of payment in preference to the bonds secured by the mortgage.

So, also, the allowance to the master in chancery is strictly costs of court incurred in the suit, and by virtue of the statute quoted were properly allowed priority of payment. Upon this matter the statute is probably declaratory of the law as it formerly existed. See Reed v. Cochran, 1 Irish Ch., N. S., 235. We conclude, that the action of the court in these particulars shows no error.

We do not see that the applicant was prejudiced by the action of the court in directing the sale of the property to be made by the sheriff of the county. It seems that the usual practice is to order the receiver to sell the property. Beach on Rec., sec. 727, et seq. Why it was not done in

this case we do not clearly understand. But it does appear that in the final decree the receiver was, by agreement of all parties at interest, left in the custody of the property until the sale should be made, with authority to operate the works upon certain terms specified in the decree, and it would seem that after that he was to be treated more as a custodian of the parties than as the officer of the court. When there is no receiver, and a sale is directed in the District Court, it is not unusual in this State to direct the sheriff to discharge that duty. In such a case the officer becomes the court's commissioner. The applicant can not justly complain that he was not permitted to sell in order to save expenses. All the creditors had an interest in the sale, and it should be made by a disinterested person. That a sale by the sheriff will involve more expense than if made by a commissioner, is by no means apparent.

We come next to the question of the effect of the sheriff's sale of the lots. At the time of the appointment of the receiver the constable had levied upon them, and had advertised a sale by virtue of an execution in his hands in favor of the applicant. The sale was made after the appointment, and the applicant became the purchaser. As to the effect of the constable's sale under the circumstances, there is some conflict in the decisions.

It is well established, we think, that after property has been placed in the hands of the receiver, it is not subject to levy and sale under execution. Being in the custody of the law, through the appointment of a receiver by a court of competent jurisdiction, it can not be interfered with by process from another court. A party having a claim upon it must intervene in the court of the receivership, and in the case in which the receiver has been appointed, and establish his right in that tribunal, or must obtain leave of that court to bring an independent action.

But the question here is, can the sheriff who has made a levy upon real estate before the appointment of a receiver over it, proceed to sell and pass the title after the receiver has been appointed? The case of Chautauqua County Bank v. Risley, 19 New York, 369, seems to hold the affirmative of the proposition. The opinion in that case lays down the broad doctrine, that if a judgment creditor have a lien upon real estate by virtue of his judgment at the time of the appointment of a receiver, he may be guilty of contempt by the attempt to enforce the collection of his judgment by a sale under execution, but that if the sale be made, it is neither illegal nor void. The facts of the case were, that a judgment creditor, when execution had been returned unsatisfied, sued his debtor to set aside a fraudulent assignment of real estate, and had a receiver appointed. He prevailed in his suit, and by order of the court the receiver sold the property. A few days after, the same property was sold under an execution issued upon a judgment against the same debtor, which was rendered before the appointment of a receiver, and which was a lien upon

the property. The court held, that the purchaser at the sheriff's sale took a good title. The judgment which was sought to be collected by the suit in which the receiver was appointed was older than the judgment under which the property was sold by the sheriff, and was also a lien upon that property. But the court was of opinion that the defendant who claimed through the receiver took only such title as was conveyed to the receiver by the deed of the party over whose property he was appointed, and that this conveyance passed the property subject to the lien of the judgment under which it was sold by the constable; and that therefore the purchaser at the execution sale took the superior title.

It appears that the laws of New York required a conveyance to a receiver in order to perfect his control over real estate; but that in case of personal property no such conveyance was necessary. Subsequently, in Walling v. Miller, 108 New York, 173, the same court held, that where the sheriff had a levy upon personal property, and a receiver was subsequently appointed, a sale by the sheriff after the appointment, without leave of the court, was wholly illegal and void. If these decisions can be reconciled, it must be upon the ground that under the laws of that State the receiver derives his title to real estate only through the conveyance of the defendant in the action, and that because such conveyance is not necessary as to personal property, a different rule applies. In re Loos, 3 N. Y. Sup., 383.

It would seem, however, that in Walling v. Miller the court intended to overrule the case of Bank v. Risley, although they do not expressly say so. In the later case they rely upon the case of Wiswall v. Sampson, 14 Howard, 52, in which the Supreme Court of the United States held, that a sale by a sheriff of real estate over which a receiver had been appointed is illegal and void, although the levy had been made before the appointment. But viewed in the light of the later decision, the case of Bank v. Risley, if not overruled, would be no authority with us, because here no conveyance to the receiver is required in order to invest him with control over real estate.

However that may be, we think Wiswall v. Sampson lays down a doctrine that is founded upon good reason and sound policy. To permit the control of a receiver to be interfered with by virtue of process from another court would be a practice fraught with injustice and productive of confusion; and the remark applies with especial force to the receivers of insolvent corporations. After all the assets of a corporation have been taken from the hands of its managers and placed under the control of a receiver, is it just to allow its property to be sold under execution? The court having deprived the corporation of the power of paying the debt and of avoiding the sale, should, in the interest of all concerned, protect its property from the sacrifice. The receivership does not destroy any liens that may have been acquired before the appointment, but the rem-

edy for their enforcement should be sought in the court in which the whole estate is being administered. We therefore conclude that the court did not err in holding that the applicant took no title to the lots by the execution sale.

Considering the earnest manner in which the application in this case has been pressed upon the court, and the able brief by which it has been supported, as well as of the important questions involved, we have deemed it proper to depart from our usual practice, and to express our views upon the points presented in a written opinion.

We find no error in the judgment of the Court of Civil Appeals, and therefore the writ of error is refused.

*Writ of error refused.*

Delivered October 26, 1893.