**FIRST SOUTHERN PROPERTIES,
INC., Petitioner,**

v.

**Vince VALLONE, Receiver, Respondent.**

**No. B–5396.**

Supreme Court of Texas.

Jan. 28, 1976.

Lackshin, Nathan & Berg, Herbert N. Lackshin and B. K. Watson, III, Houston, for petitioner.

Strickland & Gordon, Gerald S. Gordon, Houston, for respondent.

DANIEL, Justice.

This suit was brought by a receiver in the court of his appointment to set aside a substitute trustee's deed to certain real property executed after a foreclosure sale under a deed of trust. The receiver, Vince Vallone, alleged numerous irregularities in the foreclosure sale which was made to the defendant, First Southern Properties. Among these was an allegation that the substitute trustee's deed was void because the property in question was *in custodia legis* at the time of the foreclosure sale and because that sale was not authorized by the court.

At a non-jury trial, judgment was rendered for the receiver setting aside the trustee's deed and ordering a return of the purchase money to First Southern Properties. Upon appeal by First Southern, the court of civil appeals affirmed upon the grounds that the sale was void because the property was *in custodia legis* by reason of the prior receivership, and that the receiver was not estopped from setting aside the sale by reason of his failure to have on file a lis pendens notice under Article 6640[1] at the time of the sale. 523 S.W.2d 92. We affirm.

The receiver had been appointed on April 11, 1973, by a Court of Domestic Relations of Harris County in a divorce suit between Jerry Darnell and Jennye Darnell to "manage or sell" the community assets, which included numerous tracts of real property. Among these was the property in question. It had been purchased during the marriage in the name of the husband, Jerry Darnell, from Joe Oxford and wife on January 21, 1966. As a part of the consideration, Darnell executed a $21,000 note payable to the Oxfords. This note was secured by a vendor's lien and a deed of trust. The deed of trust contained a power of sale from Darnell to the named trustee or a substitute trustee appointed by the Oxfords in accordance with the terms of the instrument.

After the appointment of the receiver, a monthly installment of $233.16 became due on the Oxford note on May 1, 1973, and it was not paid. All previous monthly payments since the execution of the note on January 21, 1966, had been paid when due. The outstanding balance at the time was $7,074.43. In less than ten days after the May 1 installment became delinquent, the Oxfords employed an attorney, Charles A. Brown, to foreclose on the property. There was evidence, and the trial court found, that the Oxfords did not request the named trustee, L. C. Owens, to act and that he was alive, capable of performing, and did not resign or fail or refuse to act. Nevertheless, on May 11, 1973, the Oxfords appointed Charles A. Brown as substitute trustee, and on the same day he posted notices of a foreclosure sale to be held on June 5, 1973. Although Mrs. Oxford and the substitute trustee knew that a receiver had been appointed for the property, they did not demand payment of the delinquent installment or the accelerated balance by Darnell or the receiver. Neither did they notify either of them of the acceleration or the proposed foreclosure sale. On June 5, First Southern purchased the property as the highest of two bidders for $22,000 in cash. A deed was executed on the same day by the substitute trustee to First Southern Properties, and it is this deed which the trial court set aside.

Herbert Axelrad, President of First Southern Properties, testified that for three years his company had specialized in "distressed property sales." Prior to the purchase of the Darnell property at the foreclosure sale, Axelrad conducted a title search in Harris County, where the property is located. This included a courthouse search of the grantor-grantee indices, deed of trust records, lis pendens records, abstract of judgment records, mechanic's and materialman's lien records, and the federal bankruptcy records, and a search of indices to the same records at American Title Company in Houston. He testified that this

---

1. All statutory references are to Vernon's Texas Annotated Civil Statutes.

search did not reveal the trial court's appointment of Vallone as receiver. There is no evidence in the record to show that First Southern Properties had actual notice of the appointment of Vallone as receiver until after its purchase of the property.

First Southern contends that it is entitled to the protection extended by lis pendens Articles 6640–6642 to bona fide purchasers for valuable consideration, with actual or constructive notice, because the receiver did not have a lis pendens notice on file at the time of the sale.[2] For the same reason, First Southern contends that the receiver should be estopped to set aside the trustee's deed. The receiver in reply asserts, as held by the court of civil appeals, that his appointment by the trial court as receiver placed the property *in custodia legis* and prohibited a foreclosure sale without approval of the trial court. The receiver's counter-points relating to other alleged irregularities were not reached by the court of civil appeals and were not brought forward in this appeal.

■ It has been held that a purchaser under a power at a foreclosure sale obtains only such title as the trustee had authority to convey. *Slaughter v. Qualls*, 139 Tex. 340, 162 S.W.2d 671 (1942); *Ford v. Emerich*, 343 S.W.2d 527 (Tex.Civ.App.1961, dism. w. o. j.); *Bowman v. Oakley*, 212 S.W. 549 (Tex.Civ.App.1919, writ ref'd).

■ No one has the authority, even under a prior deed of trust or execution, to sell property held *in custodia legis* by a duly appointed receiver, unless the sale is authorized by the court in which the receivership is pending. *Ellis v. Vernon Ice, Light & Water Co.*, 86 Tex. 109, 23 S.W. 858 (1893); *Texas Trunk R. Co. v. Lewis*, 81 Tex. 1, 16 S.W. 647 (1891); *Kirby v. Dilworth & Marshall*, 260 S.W. 152 (Tex.Comm'n App.1924, holding approved); *King Land and Cattle Co. v. Fikes*, 414 S.W.2d 521 (Tex.Civ.App. 1967, writ ref'd n. r. e.); *Cline v. Cline*, 323 S.W.2d 276 (Tex.Civ.App.1959, writ ref'd n.

r. e.); *Fielder v. Parker*, 119 S.W.2d 1089, 1094 (Tex.Civ.App.1938, no writ); *Scarborough v. Connell*, 84 S.W.2d 734 (Tex.Civ. App.1935, no writ); *Glenn v. Connell*, 74 S.W.2d 451 (Tex.Civ.App.1934, no writ); *Hacker v. Hacker*, 4 S.W.2d 218 (Tex.Civ. App.1928, no writ); *Scott v. Crawford*, 41 S.W. 697 (Tex.Civ.App.1897, writ ref'd). See also *Wiswall v. Sampson*, 14 How. (55 U.S.) 52, 59, 14 L.Ed. 322 (1852); 65 Am. Jur.2d 993, § 169; 43 A.L.R. 1357; and 49 Tex.Jur.2d 155, § 123. In *Ellis, supra*, this Court held void a constable's sale of property which had been levied on prior to the appointment of a receiver and sold after such appointment. The Court said:

> ". . . The receivership does not destroy any liens that may have been acquired before the appointment, but the remedy for their enforcement should be sought in the court in which the whole estate is being administered. We therefore conclude that the court did not err in holding that the applicant took no title to the lots by the execution sale."

In *Texas Trunk R. Co. v. Lewis, supra*, this Court said:

> "In the case before us it appears not only that the suit in Kaufman county was instituted before the attachment sued out by Thompson was levied, but that the court had appointed a receiver before that was done, who, however, did not qualify until after the levy was made. We understand the courts to hold, almost without dissent, that, after the appointment of a receiver, the property to which the receivership relates is to be deemed in the custody of the law, and this seems to us the correct rule."

In *Hacker v. Hacker, supra*, which involved a receivership in a divorce case, the court said:

> "We agree with appellant that the sale under the trust deed was unauthorized and did not pass appellant's title to the

2. The receiver filed a lis pendens with the County Clerk of Harris County on June 14, 1973, the same day he filed this suit to set aside the substitute trustee's deed.

defendant Schwiekart, because the property at the time of the sale was in custodia legis. The district court of Harris county having acquired jurisdiction over the property by the divorce proceeding, and having appointed a receiver to take charge of it and dispose of it in accordance with the decree of that court, no valid sale of the property could be made under process from any other court without the consent of the court in which the receivership was pending, and for a stronger reason a sale by a trustee foreclosing a lien would not affect the title held by the receiver."

In *Cline, supra,* the court concluded "that the sale under the deed of trust was void because under the terms of said decree Tracts A and B were in custodia legis." In *King Land & Cattle Co., supra,* the court said: "Under general principles according to good reason and sound public policy a sale of real estate over which a receiver has been appointed—by anyone other than the receiver or under his authority—is illegal and void."

First Southern cites no cases to the contrary, and we have found none. Neither have we found any case holding that it is necessary for a court or its duly appointed receiver to file a lis pendens notice under Article 6640 in order to protect property *in custodia legis* or to set aside an unauthorized sale thereof. In fact this seems to be the first reported case in which this contention has been made.

First Southern apparently assumes that the jurisdiction and custody of a trial court over property, exercised through a receiver, depended in some manner upon the common law doctrine of lis pendens, which was partially abrogated and limited in 1905 by the enactment of Articles 6640–6642.[3] It is upon this basic but incorrect assumption that First Southern insists that it is an innocent and bona fide purchaser under Article 6642 because it had no actual notice of the receivership and no constructive notice by a lis pendens filed under Article 6640. It insists that these Articles apply to property held *in custodia legis* and that we should not follow the above cited cases because some of them were written prior to the 1905 statutes and the others contain some evidence or inference of actual notice of the pending receivership. We decline to change or depart from the long established rule of property law which has been continuously applied to lands *in custodia legis* without reliance upon actual or constructive notice. The doctrine of *custodia legis* is different from common law lis pendens. *Ewin v. Lindsay,* 58 S.W. 388, 394 (Tenn. Ch., 1900); Olds, *Lis Pendens,* 4 Houston L.Rev. 221, 222 n. 4 (1961). The rule pro-

---

**3.** The common law doctrine of lis pendens charged third parties with constructive notice of all types of judicial proceedings relating to real property, whether or not they had actual notice, and the purpose of the 1905 statutes was to modify and limit the harshness of this rule. *Hartel v. Dishman,* 135 Tex. 600, 145 S.W.2d 865 (1940). The relevant statutes provide:

Article 6640. Suit for land; notice to be filed

Upon the filing of the plaintiff's statement or petition in any eminent domain proceeding, or during the pendency of any suit or action, involving the title to real estate, or seeking to establish any interest or right therein, or to enforce any lien, charge or encumbrance against the same, any party seeking affirmative relief therein, may file a notice of the pendency of such proceeding or suit with the county clerk of each county where such real es-

tate, or any part thereof, is situated. Such notice shall be signed by the party filing the same, his agent or attorney, setting forth the number if any, and style of the cause, the court in which pending, the names of the party [sic] thereto, the kind of proceeding or suit and description of the land affected.

Article 6642. Transfers without notice, valid

The pendency of such suit or action shall not prevent effective transfers or encumbrances of such real estate to a third party for a valuable consideration and without other notice, actual or constructive, by a party to the suit as against a subsequent decree for the adverse party unless such notice shall have been properly filed under the name of the party attempting to transfer or encumber in the county or counties in which said land is situated.

hibiting interference with property *in custodia legis* is derived from the exclusive jurisdiction which arises out of possession of the res. Nowhere is the doctrine enforced more stringently than when other courts attempt to interfere. See *Palmer v. Texas*, 212 U.S. 118, 29 S.Ct. 230, 53 L.Ed. 435 (1909); 65 Am.Jur.2d, Receivers 996, § 174. The reason for the rule as between courts of concurrent jurisdiction was stated by the Supreme Court of the United States in *Farmer's Loan & Trust Co. v. Lake Street Elevated Rwy. Co.*, 177 U.S. 51, 61, 20 S.Ct. 564, 568, 44 L.Ed. 667 (1900) as follows:

"The possession of the *res* vests the court which has first acquired jurisdiction with the power to hear and determine all controversies relating thereto, and for the time being disables other courts of co-ordinate jurisdiction from exercising a like power. This rule is essential to the orderly administration of justice, and to prevent unseemly conflicts between courts whose jurisdictions embrace the same subjects and persons. . . ."

In *Palmer v. Texas*, 212 U.S. 118, 29 S.Ct. 230, 53 L.Ed. 435 (1909), the Court upheld, under the *custodia legis* rule, a State court receivership growing out of Texas' prosecution of the Waters-Pierce Oil Company. In that case the Court said:

". . . If a court of competent jurisdiction, Federal or state, has taken possession of property, or by its procedure has obtained jurisdiction over the same, such property is withdrawn from the jurisdiction of the courts of the other authority as effectually as if the property had been entirely removed to the territory of another sovereignty."

■ We do not believe that Articles 6640–6642 had the intent or effect of ousting courts of their exclusive custody and jurisdiction of receivership property, or of creating innocent purchasers of such property without court approval, when the receiver does not file an Article 6640 lis pendens notice. A receiver has been said to be an arm or instrumentality of the court, holding possession of property for the court which appointed him. *Farm & Home Savings & Loan Assn. v. Breeding*, 131 Tex. 518, 115 S.W.2d 615 (1938). There is nothing for a receiver to file under Article 6640 relating to his appointment or the custody of property which he holds, not as an adverse party seeking affirmative relief, but merely as an appointed officer and custodian of the court. Neither can a purchaser from a third party trustee, who is not a party to the suit, qualify under Article 6642 as an innocent purchaser of land held by a court *in custodia legis*. We hold that compliance with Articles 6640 and 6642 is not required to prevent lands in receivership from being acquired under attempted sales by third parties acting under powers not conferred or approved by the court having custody of the property.

■ The apparent harshness of the *custodia legis* rule is tempered somewhat by the fact that a purchaser without actual notice under an execution or deed of trust sale is entitled to recover his money as was ordered in the present case. Furthermore, a receivership destroys no prior vested right, nor does it determine any right as between the parties by reason of an existing contract. *Ex parte Britton*, 127 Tex. 85, 92 S.W.2d 224 (1936). The enforcement of a third party's liens or other rights are merely suspended until their enforcement is approved by the court having custody of the property. *Kirby v. Dilworth & Marshall, supra; Lynch Davidson & Co. v. Hinant*, 93 S.W.2d 532 (Tex.Civ.App.1936, no writ). We agree, however, that less controversy and inconvenience would result in the future if, in receiverships involving land, the Legislature required a notice of the receivership and designation of the land and litigants to be filed in the deed records or lis pendens records of the county or counties wherein the land is located. This would assist in preserving the effectiveness of our recording statutes and the rights of bona fide lienholders and persons holding under them. Consideration of the subject is recommended to the Legislature.

■ The judgments of the courts below are affirmed.