CHASE MANHATTAN BANK and
Bank One, N.A., Appellants,

v.

Michael R. BOWLES, Court Appointed
Receiver, Appellee.

Nos. 10–01–081–CV, 10–01–196–CV.

Court of Appeals of Texas,
Waco.

July 18, 2001.

Rehearing Overruled Aug. 23, 2001.

874

Andy McSwain, David F. Johnson, Fulbright Winniford, P.C., Waco, Arlette M. Molina, Arlette Molina & Associates, Houston, Keller Mackie Barrett Burke Wilson Castle Daffin & Frappier, LLP, Addison, for appellant.

Keith Bradley, Bradley & Bradley, Cleburne, for appellee.

Before Chief Justice DAVIS, Justice VANCE, and Justice GRAY.

## OPINION

VANCE, Justice.

Robert and Joanne Berg were getting a divorce. Part of the marital estate was their residence ("the property") worth hundreds of thousands of dollars.[1] After a dispute over Mr. Berg's handling of one-and-a-half million dollars of the business assets of the estate, on October 21, 1999, the trial court appointed Michael Bowles as Receiver over certain assets.

Robert and Joanne reached a Mediated Settlement Agreement for most of their assets. However, the property was not included. Because the divorce was about to be finalized, on February 24, 2000, the trial court ordered the property placed into the existing receivership, and severed the receivership proceeding and three pending motions for enforcement and for contempt from the divorce proceeding, giving the receivership proceeding a new cause number. Bowles listed the home with a realtor who advertised it for $425,000.

After the property did not sell, Bowles and two lienholders engaged in a dispute over their respective rights. These appeals are from two orders which were entered concerning that dispute.

## HISTORICAL AND PROCEDURAL EVENTS

The historical and procedural events leading to these appeals are involved, but reciting them is necessary to understand the issues and their resolution.

### The Banks

Chase Manhattan Bank ("Chase") and Bank One (collectively "the banks") each have a lien on the property as a result of loans they made to the Bergs. Chase is the successor-in-interest to Long Beach Mortgage Corporation ("Long Beach") by virtue of an assignment of a deed of trust on the property dated October 1998. Long Beach continued as the "servicer" of the note. The deed of trust had been assigned to Long Beach in September 1998 by the original lienholder, Assurance Mortgage Corporation of America. The original deed of trust was filed by Assurance Mortgage in Volume 2229, Page 820 of the Johnson County deed records. The original principal amount of the note was $281,250. Bank One is the second lienholder, and the original principal amount of its note was $56,250.

---

1. The property consists of a 6,000 square feet house constructed in 1993 sitting on thirteen acres of land. There is an indoor pool and a 2,000 square feet, four-car garage. There is also a 3,600 square feet horse barn.

### The Temporary Injunction

The loans were in default, and the banks pressed to have the property sold. When that process was delayed, Bank One commenced non-judicial foreclosure under its deed of trust. Bowles responded on May 31, 2000, by seeking an injunction against Bank One and Long Beach. Presumably Bowles did not realize that Long Beach no longer was the lienholder. Bowles obtained a temporary restraining order against Bank One and Long Beach (but not Chase) which blocked Bank One's attempt to foreclose. Bank One and Long Beach (but not Chase) were served with citation and a copy of the temporary restraining order.

On June 12, 2000, Bank One sent Bowles a letter stating it "will take no further action to foreclose on said property until the receivership is dissolved or otherwise terminated." Bowles filed the letter with the clerk of the court as a Rule 11 agreement. TEX. R. CIV. P. 11. After a hearing on June 13, 2000, which neither Long Beach nor Chase attended, the trial court granted a temporary injunction against Long Beach only, "restraining and enjoining Third-party defendant, Long Beach Mortgage Company its agents, servants, and employees, from directly or indirectly foreclosing on the Deed of Trust filed for record at Volume 2229, Page 820 . . . ." This volume and page number refer to the original deed of trust filed by Assurance Mortgage. At the hearing, Bowles testified that the only remaining item of value in the receivership was the property, and it was imperative that he sell it so there would be money to pay the costs, expenses, and fees related to the receivership. Bowles claimed to have two potential purchasers of the property.

By November 2000 the property had still not been sold. Chase filed a Motion to Terminate Injunction, requesting that Chase be allowed to proceed with non-judicial foreclosure on January 2, 2001. The motion recited the history of the assignments of the deed of trust, and pointed out that Long Beach was not the owner of the note. The motion did not argue that the temporary injunction may be void as to Chase because Chase was not a named third-party defendant to the receiver's third-party action. Two weeks later Bank One filed a "copy cat" motion to terminate the injunction.

### The Hearing on the Sale of the Property

A hearing was held on December 14, 2000. Bowles lawyer informed the court he had a contract for sale on the house for $422,000. (The realtor testified that if the property had not been allowed to deteriorate during the pendency of the divorce, it might have sold for $500,000.) The closing was to occur December 15. The lawyer said: "And when it's all said and done at 422, to pay off the liens and all the expenses of the receivership, the funds are going to be $36,485 . . . short." Bowles introduced a balance sheet showing that $458,874.79 was needed to pay all debts, including $7,518 to Bowles for fees and $12,034.60 for his expenses, $7,226.24 to Bowles's lawyer for fees, $313,645.38 to Chase, and $59,477.76 to Bank One. The fees and expenses to Bowles and his lawyer were only for their work in relation to the property, as all other assets of the receivership had been disposed of earlier. Bowles requested that the proceeds of the sale be distributed in accordance with the hierarchy in section 64.051 of the "Receivership" statutes. TEX. CIV. PRAC. & REM. CODE ANN. § 64.051 (Vernon 1997). He maintained that the statute would require that Bowles and his lawyer be paid first and the banks last. Bowles lawyer said: "At this point we would like to disburse the other funds and cut the receiver loose. Terminate the receivership and get

[Bowles] and I out of here so we can stop running up expenses on this case." He said the matter would be completed after the sale and after the banks' liens were released by the court. The $340,000 which would be remaining after all expenses, fees, and costs were paid would be deposited into the registry of the court, and the banks would have to work out how the $340,000 would be applied to their $373,123.14 in liens.

Bank One's lawyer said: "I came here for some finality to this .... I'm still a little sketchy on whether or not all of these fees and costs are directly related to this asset. It sounds to me like some of them may be related to the business that Mr. Berg had and some of these other as assets that the receiver was trying to get his arms around. That's neither here nor there. I think we would be happy with something along these lines. If we're $36,000 short, Bank One could take a hit for half of that and Chase could take a hit for other half." Bowles lawyer said: "If that's the way The Court wants to go that would be fine with us just to split the costs between the two lien holders. I'm just trying to get the thing resolved."

Chase's lawyer protested that (1) Bank One was the second lien holder, and might have to pay the entire $36,000 shortfall because Chase would be entitled to have its lien satisfied first, and (2) the court had no authority to release the banks' liens.

The hearing ended with the court ordering the property sold, with the remainder after payment of fees, costs, and expenses to be deposited into the registry of the court if Chase and Bank One could not reach agreement on how much each would receive. Over Chase's continued objection, the court also ordered the liens released upon sale of the property. The next day Chase and Bank One sent a Rule 11 agreement to the court stating that from the anticipated proceeds after payment of other costs, Chase would take $303,645.38 and Bank One $32,991.93.

### Subsequent Events

The sale did not go through because the buyer backed out. On January 18, 2001, Chase filed a Motion to Release Property from the Receivership's Estate. A hearing was held on January 23, 2001, on Chase's motion to terminate the injunction and motion to release the property from the receivership. Bowles alleged that Chase was attempting to avoid the receiver's being paid $30,141.64 in outstanding fees and expenses (some of which were for his attorney's fees). Bowles proposed that the receivership be dissolved so foreclosure could proceed, but that Chase be ordered to pay the $30,141.64, and also to pay the outstanding property taxes (about $28,000). Chase countered that under existing precedent, the receiver's fees and expenses did not take priority over a first lienholder's interests when the lienholder did not, as here, request the receivership. The court adjourned the hearing, instructing the parties to file briefs.

On January 30, 2001, Bowles filed a Motion to Enforce Rule 11 Agreement, alleging that Bank One breached the Rule 11 agreement of June 12, 2000, because Bank One did not "refrain from pursing foreclosure of the subject real property." The motion requested the court to "overrule [Bank One's] Motion to Terminate the receivership, maintain the Temporary Injunction in place, and award the Receiver all reasonable and necessary attorneys' fees occasioned thereby." Bowles was complaining about Bank One's "copy cat" motion to terminate the injunction. On February 1, 2001, Bowles filed a 217–page response, including forty-two exhibits and other attachments, to Chase's motion to terminate the injunction and motion to release property from the receivership es-

tate, and to Bank One's motion to terminate the injunction. It asked that the court deny the pending motions of the banks and tax Bowles's costs against the banks.

A hearing on all pending motions of all parties was held on February 7, 2001, almost a year after the property was placed into the receivership. Documents were admitted itemizing Bowles's costs, expenses, and fees and the fees of his lawyer. Bowles testified that Mr. Berg had a manufacturing business with inventory, but that he had not considered pursing payment of his receiver's fees from Berg. He said there had been four potential sales of the property. The first, in late April or early May 2000, was a contract for sale for $419,000. The second, in December 2000, was a contract for sale for $423,000. The two most recent offers he had received were in a contract for sale for $250,000 and a verbal offer for $350,000. He said there were outstanding receiver's costs, expenses of $19,800, receiver's attorney's fees of $9,300, and attorney's fees for the Rule 11 motion of $7,400.[2] Bowles's lawyer later indicated in his testimony that the $7,400 also included time spent on his 217–page response (including 206 pages of exhibits and other attachments) to Chase's motions and to Bank One's motion. Bowles admitted that approximately $3,900 of the $19,800 in receiver's fees and expenses were not attributable to work he did on the property. Also, some of the expenses were for utilities and upkeep on the property while he attempted to have it sold. One exchange during his testimony was:

Q: What change in circumstance would you—would have to happen for you to recommend that the Court—that the property be taken out of the receivership?

A: If all the receiver expenses and costs were to be paid, then I would have no objection to the property being removed and all the attorney's fees.

Q: Is that the only ground that you can -?

A: I think so, yes, ma'am.

The court issued two orders on February 16, 2001. The first order "granted" the Motion to Enforce Rule 11 Agreement without any specificity, and ordered Bank One to "pay to the receiver the sum of $7,575.42 in attorney's fees and expenses occasioned by the breach of the Rule 11 Agreement for which let execution issue." The second order denied the banks' motions to terminate the injunction, denied Chase's motion to release property, and ordered that the banks jointly and severally "pay to the Receiver the sum of $29,026.50 as reasonable and necessary interim Receivership fees and expenses incurred in the maintenance and preservation of the estate for the benefit of all parties, taxed as costs of court, of which $17,864.86 has previously been approved by the Court and $11,161.64 of which is hereby approved by the Court for which let execution issue."[3]

Both banks appeal from the order denying their motions and awarding receiver's fees and expenses, and separately Bank One appeals from the Rule 11 order.[4]

---

**2.** The Rule 11 motion is a single-page document with no supporting legal authority.

**3.** The Receiver caused an Abstract of Judgment for each order to be filed in Harris County.

**4.** The former appeal is Cause No. 10–01–081–CV, and Bank One's appeal is Cause No. 10–01–196–CV.

## JURISDICTION

■ Normally "[a]ppellate courts have jurisdiction to consider immediate appeals of interlocutory orders only if a statute explicitly provides appellate jurisdiction." *Stary v. DeBord,* 967 S.W.2d 352, 353 (Tex. 1998). A threshold question is whether these orders are interlocutory, over which we have no jurisdiction, or instead meet a statutory or common law exception to the general rule.

■ "A person may appeal from an interlocutory order of a district court ... that ... grants or overrules a motion to dissolve a temporary injunction as provided by Chapter 65...." TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(4) (Vernon Supp. 2001); *e.g., Murphy v. McDaniel,* 20 S.W.3d 873 (Tex.App.—Dallas 2000, no pet.). We have jurisdiction to review that part of the Order denying the banks' motions to terminate the temporary injunction. The remainder of that Order denying Chase's motion to release the property from the receivership, and the other Order on the Rule 11 agreement, are subject to a different analysis.

■ No statutes provide for an appeal from an order denying a motion to release property from a receivership or an order on a Rule 11 agreement. Orders about Rule 11 agreements normally are not appealable. *E.g., Qwest Communications Intern. v. AT & T Corp.,* 983 S.W.2d 885 (Tex.App.—Austin 1999), *rev'd,* 24 S.W.3d 334 (Tex.2000) (the order pertained to an injunction, and therefore was appealable under section 51.014(a)(4)). However, Bank One argues that we can review the Orders because orders which resolve discrete issues in connection with a receivership are final and thus appealable. *Huston v. Federal Deposit Ins. Corp.,* 800 S.W.2d 845, 847 (Tex.1990). *Huston* involved the receivership of a failed bank. The court likened orders in a receivership which finally adjudicate substantial rights to orders in probate. "A probate order or judgment is final if it conclusively disposes of and is decisive of the issue or controverted question for which that particular part of the proceeding was brought, even if the decision does not fully and finally dispose of the entire probate proceeding." *Id.* at 848; TEX. PROB. CODE ANN. § 5(f) (Vernon Supp.2001). In addition, orders pertaining to a receivership which award fees such as attorney's fees are appealable. *E.g., Wittner v. Scanlan,* 959 S.W.2d 640, 642 (Tex.App.—Houston [1st Dist.] 1995, writ denied); *Ashmore v. North Dallas Bank & Trust,* 804 S.W.2d 156, 158 (Tex. App.—Dallas 1990, no writ); *Bergeron v. Session,* 554 S.W.2d 771 (Tex.Civ.App.—Dallas 1977); *see also Burns v. Miller, Hiersche, Martens & Hayward, P.C.,* 909 S.W.2d 505, 506 (Tex.1995).

■ We will follow the reasoning in these cases. The Order denying Chase's motion to release the property resolves a discrete issue in the receivership, *i.e.,* whether the property should be released from the receivership so the banks can foreclose. The only significant relief granted by the Rule 11 Order was to award Bowles his attorney's fees. Therefore, we will review these Orders as final, appealable orders on the discrete issues of the *res* of a receivership and a receiver's legal fees.

## THE ORDER DENYING THE BANKS' MOTIONS

### *The Legal Standards*

■ "[D]ecrees of injunction ... may be reviewed, opened, vacated or modified by the trial court upon a showing of changed circumstances." *Smith v. O'Neill,* 813 S.W.2d 501, 502 (Tex.1991). Changed circumstances, including a change in the law, and the fact that a

fundamental error may have been made by the trial court in issuing the injunction, are grounds to dissolve an injunction. *Henke v. Peoples State Bank,* 6 S.W.3d 717, 721 (Tex.App.—Corpus Christi 1999, pet. dism. w.o.j.). "Changed circumstances are conditions that altered the status quo existing after the temporary injunction was granted or that made the temporary injunction unnecessary or improper." *Id.; see also Murphy v. McDaniel,* 20 S.W.3d 873, 878 (Tex.App.—Dallas 2000, no pet.). The purpose of a motion to dissolve is not to give the movant an opportunity to relitigate the basis for the injunction when that basis has not changed. *Tober v. Turner of Texas, Inc.,* 668 S.W.2d 831, 835–36 (Tex. App.—Austin 1984, no writ). Otherwise, a litigant might file numerous motions to dissolve until the resistance of the trial court was worn down or perhaps a hearing before a different judge was obtained. *Id.* at 835. "Such actions needlessly add to the judicial caseload, both at the trial and appellate level." *Id.*

█ This injunction was issued in June 2000. Chase's motion to terminate it was filed five months later in November 2000. During this time, the property had diminished in value by about $80,000 ($500,000 to $420,000). The property had no equity because its market value was less than the debts to be applied against it at sale. A recent contract for sale set to close in December 2000 had fallen through. By the time of the hearing in February 2001, the property had diminished in value another $70,000 to $170,000 ($420,000 to $350,000–$250,000). These are changed conditions and are sufficient to require the trial court's reconsideration of the injunction.

█ A trial court's ruling on a motion to dissolve an injunction is reviewed for whether the court abused its discretion. *Henke,* 6 S.W.3d at 721; *Desai v. Reliance*

*Mach. Works, Inc.,* 813 S.W.2d 640, 642 (Tex.App.—Houston [14th Dist.] 1991, no writ). The ruling is reviewed under the same standards as its decision on the original motion for injunctive relief. *State v. Friedmann,* 572 S.W.2d 373, 375 (Tex. App.—Corpus Christi 1978, writ ref'd n.r.e.). Accordingly, a trial court abuses it discretion in denying a motion to dissolve an injunction when it could reasonably have reached only one decision, and instead it reached another decision which is therefore arbitrary and unreasonable. *See Walker v. Packer,* 827 S.W.2d 833, 839–40 (Tex.1992); *Adust Video v. Nueces County,* 996 S.W.2d 245, 252 (Tex.App.—Corpus Christi 1999, no pet.). Because the motion to release the property from the receivership has the same goal as the motions to dissolve the injunction, we will review the denial of this motion under these same standards.

### Analysis

The only reason advanced by Bowles to keep the property in the receivership and to deny the banks their right of foreclosure was to attempt to recover his outstanding costs, expenses, and fees, including attorney's fees. However, if Bowles's costs, expenses, and fees cannot legally take precedence over the liens of the banks, there is no reasonable basis to refuse to release the property and allow the banks to foreclose. If there is no equity in the property, all proceeds from a sale would go to satisfy the banks' liens. In that event, the trial court would have abused its discretion by denying the motions. The banks argue that if a lienholder does not request or agree to the receivership, its liens are superior to the costs, expenses, and fees of the receiver. Therefore, the banks maintain that they are entitled to be paid first from the proceeds of any sale of the property.

No one, even a lienholder with a deed of trust, can sell property held *in custodia legis* by a duly appointed receiver. *First S. Props., Inc. v. Vallone*, 533 S.W.2d 339, 341 (Tex.1976). Any such sale is illegal and void. *Id.* at 342; *Huffmeyer v. Mann*, 49 S.W.3d 554, 560 (Tex.App.— Corpus Christi, 2001). The fact that a purchaser had no knowledge of the receivership, *e.g.*, by lis pendens notice, does not alter this rule. Without court authorization, the property cannot be sold. *Id.* at 341.

However, "a receivership destroys no prior vested right, nor does it determine any right as between the parties by reason of an existing contract." *First S. Props.*, 533 S.W.2d at 343 (citing *Ex parte Britton*, 127 Tex. 85, 92 S.W.2d 224 (1936)); *Huffmeyer*, 49 S.W.3d at 560. "The enforcement of a third party's liens or other rights [is] merely suspended until their enforcement is approved by the court having custody of the property." *First S. Props.*, 533 S.W.2d at 343; *Huffmeyer*, 49 S.W.3d at 560.

Because "a receivership is always subject to vested rights," a lienholder's interest in property held in a receivership "has priority over costs and expenses incurred in the administration and operation of the receivership." *Tennant v. Dunn*, 130 Tex. 285, 110 S.W.2d 53, 59 (1937); *Hayes v. Gardner*, 40 S.W.2d 917, 919 (Tex.Civ.App.—Dallas 1931, no writ); *Van Valkenburgh v. Ford*, 207 S.W. 405, 419 (Tex.Civ.App.—Galveston 1918), *aff'd*, 228 S.W. 194 (Tex.1921); *Houston Ice & Brewing Co. v. Fuller*, 26 Tex.Civ.App. 239, 63 S.W. 1048 (1901, no writ). There are two exceptions to the general rule. One arises when the receivership is formed at the instigation of the lienholder, or the lienholder acquiesces to the receivership and seeks its benefits. There, the receiver's expenses and fees take priority over the lienholder's interests. *Tennant*, 110 S.W.2d at 59; *Craver v. Greer*, 107 Tex. 356, 179 S.W. 862, 866–67 (1915); *Mid–Continent Supply Co. v. Conway*, 240 S.W.2d 796, 800–04 (Tex.Civ.App.—Texarkana 1951, writ ref'd n.r.e.); *Mayotown Lumber Co. v. Nacogdoches Grocery Co.*, 221 S.W. 644, 649 (Tex.Civ.App.—Beaumont 1920), *aff'd*, 236 S.W. 704 (Tex.1922); *Van Valkenburgh*, 207 S.W. at 419. The other exception applies when the lienholder knows of and consents to the receivership, and fees, expenses, and debts are incurred from a receiver's operation of a business important to the public, *e.g.*, a water utility or a railroad. In that event, the receiver's expenses and fees take priority over the interests of the lienholder. *Craver*, 179 S.W. at 866; *Clint v. Houston Ice & Brewing Co.*, 106 Tex. 508, 169 S.W. 411 (1913); *Ellis v. Vernon Ice, Light & Water Co.*, 86 Tex. 109, 23 S.W. 858, 859–60 (1893); *Gulf Pipe Line Co. v. Lasater*, 193 S.W. 773, 779–80 (Tex.Civ.App.—San Antonio 1917, writ ref'd) (distinguishing *Ellis*: "The *Ellis* Case is the only one in Texas that has gone to the extent of holding that a lien can be impaired or actually destroyed by using the incumbered property to pay the costs of a receivership. However, the receivership in that case was procured with the knowledge and consent of the lienholder, and that is the only ground upon which it can be justified under the laws of Texas."). Neither of these exceptions applies in this case.

Because the banks' liens take priority over Bowles's costs, expenses, and fees, Bowles cannot be paid from the proceeds of the sale of the property until the banks' liens are fully paid. Consequently, there being no equity in the property, no reason remained for the trial court to keep the property in the receivership or to enjoin the banks from foreclosing. Therefore, the trial court abused its discretion in

denying the banks' motions to dissolve (terminate) the injunction and Chase's motion to release the property from the receivership.

The banks' issues about the Order denying their motions are sustained. Because the awards of receiver's costs, expenses, and fees derive from Bowles being successful in having these motions denied, the banks' issues about those awards are also sustained.

## THE ORDER ON THE RULE 11 AGREEMENT

The Rule 11 agreement, dated June 12, 2000, was a letter sent by Bank One to Bowles within two weeks after Bowles obtained a temporary restraining order in response to Bank One's attempted non-judicial foreclosure. The letter said Bank One "will take no further action to foreclose on said property until the receivership is dissolved or otherwise terminated." There was no reciprocal action or inaction to be taken by Bowles. He unilaterally filed the letter with the clerk of the court as a Rule 11 agreement. Tex. R. Civ. P. 11.

Bowles filed a one-page Motion to Enforce Rule 11 Agreement on January 30, 2001.[5] It asserted that Bank One breached the agreement by pursuing foreclosure on the property. Although not stated in the motion, Bowles's assertion that Bank One violated the Rule 11 agreement was based on Bank One's filing its motion to terminate the injunction (the "copycat" motion), in which Bank One requested the court "to allow it to recommence foreclo-

sure proceedings to schedule the property for foreclosure sale on January 2, 2001."[6] The trial court granted Bowles's motion to enforce the agreement, without ordering Bank One to do or not do any act in particular, and awarded Bowles $7,575.42 "in attorney's fees and expenses occasioned by the breach of the Rule 11 Agreement."

■ A trial court's ruling regarding a Rule 11 agreement is reviewed for abuse of discretion. *In re Acevedo*, 956 S.W.2d 770, 775 (Tex.App.—San Antonio 1997, no writ); *Rodriguez v. State Dept. of Highways*, 818 S.W.2d 503, 504 (Tex.App.—Corpus Christi 1991, no writ.)

■ We hold that the trial court abused its discretion in granting Bowles's motion, because Bank One did not violate the agreement by merely filing its motion to terminate the injunction. We do not believe that filing the motion was an "action to foreclose on said property." By Bowles's overly broad interpretation, Bank One's motion to terminate the injunction violated the Rule 11 agreement because it "took further action to foreclose" before "the receivership is dissolved or otherwise terminated." Bowles's interpretation would deny Bank One the right to petition the court no matter how long the receivership lasted or how much circumstances changed. We will not read the agreement so broadly. Instead, we apply a common sense meaning to the language in the agreement, which is that Bank One bound itself not to attempt foreclosure until au-

---

5. This motion was filed after the hearing on January 23, 2001, during which the court heard arguments primarily about whether the receiver's fees and expenses took priority over the banks' interests, and at the conclusion of which the trial court asked for briefs. The motion was filed before the final hearing on all the motions on February 7, 2001.

6. On February 1, 2001, Bowles's lawyer also filed a 217–page response to the banks' motions to terminate the injunction, and to Chase's motion to release the property from the receivership. Exhibits and attachments comprised 206 of the 217 pages.

thorized to do so, either by cessation of the receivership or by approval of the court.

Bank One's issues about the Order granting the Rule 11 motion are sustained. Because the awards of attorney's fees and expenses derive from Bowles being successful in having the motion granted, Bank One's issues about those awards are also sustained.

## CONCLUSION

The Order of the trial court denying the banks' motions to terminate the injunction and Chase's motion to release the property from the receivership, and the Order granting the Motion to Enforce the Rule 11 agreement, are both reversed, and the awards for costs, expenses, and fees contained in them are set aside.[7] We render judgment that the injunction is dissolved and the property is released from the receivership.

---

7. Nothing herein prevents the Receiver from pursuing from other sources reimbursement for any costs, expenses, and fees incurred in the receivership.